**Milton SCHONBERGER, Plaintiff,**

v.

**Ivan SERCHUK, Benjamin Zelermyer, and Serchuk & Zelermyer (d/b/a Serchuk, Wolfe & Zelermyer and Serchuk, Pisani & Wolfe), Individually, Severably and Jointly, Defendants.**

No. 89 Civ. 7094 (PKL).

United States District Court, S.D. New York.

July 10, 1990.

On Motion for Reargument Aug. 2, 1990.

Lum, Hoens, Conant & Danzis, New York City (Paul A. Sandars, of counsel), for plaintiff.

Serchuk & Zelermyer, White Plains, N.Y. (Frank A. Bress, Robert M. Kaplan, Ellen G. Margolis, of counsel), pro se.

## OPINION AND ORDER

LEISURE, District Judge.

This is an attorney malpractice action with the jurisdiction of this Court based on diversity of citizenship. Defendants have moved for dismissal or for summary judgment on most of plaintiff's causes of action. Defendants have also moved for a stay of a portion of this action pending resolution of a related proceeding in state court. Plaintiff has cross-moved for permission to file a second amended complaint

to add two additional causes of action to his claims. Finally, both parties have moved for the imposition of sanctions pursuant to Fed.R.Civ.P. 11.

## BACKGROUND

Most of the facts in this action are in dispute. The Court will, however, provide a brief background of those facts that appear to be undisputed. Plaintiff Milton Schonberger ("Schonberger") established an attorney-client relationship in the mid–1970s with the defendant law firm, now known as Serchuk & Zelermyer. At that time, Schonberger, apparently an inventor by trade, had recently developed the idea of, and process for, a disposable clinical thermometer for hospital use. Defendants agreed to represent Schonberger in his early contract and corporate work related to this invention.[1] While some of this work was done without a request for or expectation of a fee, at some point during the early years of the relationship, Schonberger agreed to assign a small percentage of his royalties from the patents resulting from his invention to the law firm as compensation for work performed.

The instant action arises out of defendants' representation of Schonberger in litigation resulting from the effort to produce and market the invention. In 1977, Schonberger licensed Gambro, A.B., a Swedish manufacturing company, to produce products under his patent. A year later, Gambro cancelled the agreement. In 1980, Schonberger entered a new licensing agreement with Fairleigh S. Dickinson, Jr. ("Dickinson"). Dickinson, who had paid Schonberger $500,000 in advance royalties, in turn assigned his license to Science Development Corporation ("SDC"), an entity Dickinson had organized to produce and market products arising from Schonberger's patent. Schonberger agreed to work for SDC in order for the company to benefit from his knowledge and understanding of the technology.

Just before Schonberger entered into the agreement with Dickinson, Gambro began to manufacture a product which appeared to be based on Schonberger's technology. Defendants, at the instruction of Schonberger, filed suit against Gambro. That suit was apparently settled for $650,000. Schonberger does not allege any malpractice in relation to the Gambro suit.

In 1982, Schonberger identified a potential customer for SDC's product. That customer, a Swedish company called Tempro, S.A., was owned by Jacques Piquerez ("Piquerez"), who was introduced to Schonberger by a mutual acquaintance. At some point after Tempro came into contact with SDC, defendant Ivan Serchuk ("Serchuk") began representing Piquerez and Tempro in their legal affairs. The parties disagree about the origin and purpose of this representation. Later in 1982, Schonberger, who had become president of SDC, resigned that position, as well as his position on the Board of Directors of the company, because he felt there was a conflict between his role as a manager and as a licensor. The presidency of SDC was turned over to Edwin May ("May").

In 1983, SDC was finally ready to begin production of products based on Schonberger's patent. The company, however, needed financing before production could begin. Piquerez, Schonberger and Serchuk arranged for financing for Tempro which, in turn, ordered a substantial quantity of goods from SDC. It took approximately a year before SDC began to ship goods to Tempro. When it did, Tempro found the goods to be unsatisfactory. Evidently, Tempro contacted Schonberger regarding its dissatisfaction with SDC's product. Schonberger wrote to May and Dickinson in the spring of 1984 complaining about the lack of quality of the product. The dispute was not resolved on an amicable basis. In June 1984, Tempro filed suit against SDC and Dickinson, attacking the quality of SDC's product. SDC and Dickinson in turn filed a third-party complaint against Schonberger, alleging that Schonberger, as the licensor and former president of SDC, was responsible for SDC's failure to produce a sufficient product. Schonberger counter-

---

**1.** It appears that Schonberger had separate patent counsel.

claimed, alleging that SDC and Dickinson had breached the licensing agreement by, in essence, failing to produce an acceptable product. Schonberger also cancelled his licensing agreement with Dickinson and SDC. Defendants represented Schonberger in this action.

In March 1985, the Tempro action was settled amongst all the parties, and the claims and counterclaims arising out of the third-party complaint were dismissed without prejudice. Schonberger now alleges that he never approved the settlement of that action. Shortly after the conclusion of the Tempro action, Dickinson and SDC initiated arbitration proceedings against Schonberger due to Schonberger's cancellation of the licensing agreement. Schonberger again turned to defendants for representation. Over the next two and a half years, defendants represented Schonberger in what turned out to be extensive arbitration proceedings. On October 5, 1987, the arbitrators ruled in favor of Schonberger, dismissing all of SDC's and Dickinson's claims. The arbitrators also awarded Schonberger $750,000, although this was only a small percentage of the actual damages Schonberger had originally sought.

While plaintiff claims that the relationship between the parties to the case at bar had deteriorated before the beginning of the arbitration proceedings, it is clear that whatever relationship remained was destroyed by the battle over the compensation of defendants for their work on the arbitration. The parties disagree about what payment mechanism was agreed to for the representation. Regardless of what form it took, the record indicates that Schonberger had great difficulty making any payments. At least one check to defendants for $19,000 was returned for insufficient funds, and Schonberger defaulted on a loan he had received from a bank represented by defendants. Part of the proceeds from that loan went to pay defendants for their work on the arbitration proceedings. The loan was secured by a mortgage on Schonberger's son's house, and Schonberger's subsequent default resulted in the imposition of foreclosure proceedings against his son's house.

Meanwhile the arbitration proceedings continued. Defendants, on behalf of Schonberger, moved to confirm the arbitrator's award. That confirmation was rendered by Justice David Saxe of the New York State Supreme Court, New York County, in January 1988, and judgment was entered in April 1988. SDC and Dickinson appealed that award to the New York State Supreme Court, Appellate Division. At this point, Schonberger dismissed defendants and hired new counsel. Defendants in turn petitioned to have Justice Saxe determine and enforce a statutory lien that they had filed against plaintiff's arbitration award. That action is still pending. Meanwhile, SDC and Dickinson refiled their motion to dismiss the arbitrator's award, which was granted in November 1988.

Plaintiff makes a number of malpractice allegations in his twenty-four count amended complaint. Defendants have moved for dismissal of, or summary judgment on, most of plaintiff's claims. Defendants have also moved for a stay of this action, should their instant motion to dismiss be denied, pending resolution of the state action on their statutory lien. Plaintiff has cross-moved for permission to amend his complaint to add two new causes of action. Finally, both parties have moved for the imposition of sanctions.

## DISCUSSION

A) Standards

### 1) Motion to Dismiss

Most of defendants' motion is presented as a motion to dismiss pursuant to Rule 12(b). A motion to dismiss under Fed.R. Civ.P. 12 must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). The Court must accept plain-

tiff's allegations of facts as true, together with such reasonable inferences as may be drawn in its favor. *See Murray v. Milford*, 380 F.2d 468, 470 (2d Cir.1967). *See also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686. Fed.R.Civ.P. 8(a) requires only a " 'short and plain statement of the claim' that will give the defendant fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra*, 355 U.S. at 47, 78 S.Ct. at 103, *quoting* Fed.R.Civ.P. 8(a)(2), *cited in Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

"The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (citation omitted). "Dismissal of a complaint for failure to state a claim is a 'drastic step.' " *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir.1985) (citation omitted).

### 2) Motion for Summary Judgment

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." " 'Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.' " *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 10 (2d Cir.1989), *quoting Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied sub nom. Thomas J. Lipton, Inc. v. R.C. Bigelow, Inc.*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra*, 477 U.S. at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which "must set forth facts showing that there is a genuine issue for trial." *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

### B) Statutes of Limitation

Defendants challenge plaintiffs' various claims on statute of limitation grounds. The Court's ability to address this important defense is clouded by the indefinite

nature of the amended complaint. Plaintiff has lumped some twenty-four claims together which, he now claims, are all simply variants on a legal malpractice claim. Plaintiff's Memorandum of Law at 20. The Court does not find plaintiff's pleading to be so simple. On its face, the amended complaint appears to contain a variety of claims, not just allegations of malpractice. "Count 10" of the pleading clearly alleges intentional interference with contract, not legal malpractice. Additionally, each count appears to contain an allegation of either intentional or negligent infliction of emotional distress and for loss of reputation. To the extent that these allegations seek recovery above and beyond that available for legal malpractice, they must be separately addressed by the Court.

■ Count 10 of the amended complaint avers that defendants intentionally interfered with the contractual relations between Schonberger and Dickinson. There is some disagreement among the courts as to the appropriate statute of limitation for such a cause of action. At least one judge in this Court has applied a one-year limitation period. *Rio v. Presbyterian Hospital of New York*, 561 F.Supp. 325, 328 (S.D.N. Y.1983). More recently, however, the Second Department has found that N.Y.Civ. Prac.L. & R. ("CPLR") 214(4) applies to such an action, and thus the limitation period is three years. *Kartiganer Associates, P.C. v. New Windsor*, 108 A.D.2d 898, 899, 485 N.Y.S.2d 782, 784 (2d Dep't), *appeal dismissed*, 65 N.Y.2d 925 (1985). Even applying the three-year limitation period, Count 10 fails. A cause of action for intentional interference with contract arises when the contract at issue is breached. In the instant case, the contract at issue was breached more than three years prior to the filing of this action. Thus, Count 10 of the amended complaint is dismissed as untimely.

■ While it is not clear from its face, the amended complaint could be read to include separate damage claims for inten-tional infliction of emotional and physical distress. Such claims are governed by a one-year statute of limitation pursuant to CPLR 215. *Gallagher v. Directors Guild of America*, 144 A.D.2d 261, 262–63, 533 N.Y.S.2d 863, 864–65 (1st Dep't 1988), *appeal denied*, 73 N.Y.2d 708, 540 N.Y.S.2d 1003, 538 N.E.2d 355 (1989); *Jemison v. Crichlow*, 139 A.D.2d 332, 335, 531 N.Y. S.2d 919, 922 (2d Dep't 1988), *aff'd*, 74 N.Y.2d 726, 544 N.Y.S.2d 813, 543 N.E.2d 78 (1989). A review of the amended complaint indicates that the last act complained of occurred more than a year prior to the filing of this action. Thus, to the extent that plaintiff seeks independent recovery for intentional infliction of emotional or physical distress, such claims are time-barred. The same statutory period, and thus the same result, applies to plaintiff's claims to the extent he attempts to plead independent claims for damage to reputation. *See Morrison v. National Broadcasting Co.*, 19 N.Y.2d 453, 458–59, 280 N.Y.S.2d 641, 644, 227 N.E.2d 572, 574 (1967).

C) Attacks on Counts 1–3, 6–10, and 24

Defendants move to dismiss counts 1–3, 6–10, and 24 of the amended complaint as insufficient as a matter of law.[2] The Court cannot agree. While the Court finds the amended complaint to be less than cogently drafted, it does find that cognizable claims for legal malpractice have been stated in counts 1–3, 6–9 and 24. The Court must view the pleading in the light most favorable to plaintiff on the instant motion. In that light, plaintiff's claims must prevail, as the amended complaint as a whole provides sufficient support to survive the instant motion. Similarly, to the extent that any claims for negligent infliction of physical or emotional distress may be timely, those claims must survive the instant motion. Taken as true, plaintiff's allegations could be viewed by a jury as sufficient to support a claim for negligent infliction of physical and emotional distress.[3] Finally,

---

2. The Court notes that Count 10 has been dismissed as untimely.

3. The Court notes that any claims for intentional infliction of emotional or physical distress are untimely.

plaintiff's claims for punitive damages are supported by a favorable reading of the amended complaint. Recovery of punitive damages requires a showing of "conduct sufficiently willful and egregious to indicate a need for something more than compensatory relief." *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118 (2d Cir.1986); *see also Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 282 (2d Cir.1990) *citing New York Pattern Jury Instructions—Civil* 2:278 (2d ed. 1974). The allegations of the amended complaint can be read as sufficient on a motion to dismiss to support a claim for punitive damages.

## D) Attorneys' Fees and Lost Profits

Defendants contend that plaintiff's claims for award of attorneys' fees and for lost profits should be dismissed. "[T]he general policy in United States courts [is] that each party bears the cost of his own counsel's compensation." *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 670 (2d Cir.1988), *citing Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Statutory and contractual provisions may carve out exceptions to that rule. However, those provisions must be clearly pled to overcome the general rule. Plaintiff has failed to indicate anywhere in his complaint a statutory or contractual basis for an award of attorneys' fees in this action. Accordingly, plaintiff's demand for the award of attorneys' fees in this action is dismissed.

Lost profits can be recovered under New York law. A plaintiff seeking recovery of lost profits must show:

First, ... that such damages have been caused by [defendants'] breach and second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes. In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made. If it is

a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty.

*Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234, 235 (1986) (citations omitted). The Court agrees with defendants that plaintiff's amended complaint provides a very thin reed for the award of lost profits, as Schonberger's invention, and thus the marketing of it, were quite new and thus speculative. However, a reasonable inference can be drawn from the amended complaint that, according to plaintiff, Schonberger lost profits not only as a result of defendants' alleged interference with the Dickinson contract, but also because the continued litigation and arbitration between Schonberger and Dickinson had the effect of reducing Schonberger's ability to earn profits. Thus, the Court will not dismiss plaintiff's claims for lost profits at this time.

## E) Waiver of Counts 4 and 5

■ Counts 4 and 5 of the amended complaint allege that defendants dismissed a counterclaim in Dickinson's and SDC's action against Schonberger without Schonberger's approval. Defendants allege that these claims are barred by waiver because plaintiff continued to retain defendants as his counsel well after the allegedly wrongful dismissal of the counterclaim. Defendants make a compelling argument that continued retention after an allegedly wrongful and protested action should act as a waiver to any malpractice claim based on that action.

In general, waiver defenses involve questions of fact, and thus are inappropriate for resolution on a motion to dismiss. *Manecke v. School Board*, 553 F.Supp. 787, 788 (M.D.Fla.1982), *aff'd in part and rev'd in part*, 762 F.2d 912 (11th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). However, where the waiver is clear on the face of the complaint,

dismissal would be proper. In the instant case, defendants contend that any claims as to the dismissal of the counterclaim have been waived as a matter of law.[4] The Court cannot agree. By defendants' own admission, waiver can only have taken place if the relationship between the parties had deteriorated to the point where there is no longer any trust or confidence between the lawyer and his client.

Defendants rely heavily on plaintiff's affidavit to show that the attorney-client relationship had deteriorated long before the instant action, and had in fact reached the point of loss of confidence by the time of the allegedly improper settlement of the Tempro action. However, defendant Benjamin Zelermyer's ("Zelermyer") own affidavit contradicts plaintiff's less than rosy picture of the attorney-client relationship at the time of the conclusion of the Tempro action. Affidavit of Benjamin Zelermyer, Esq., sworn to on December 15, 1989, ¶ 38. In order to accept defendants' argument in favor of waiver, the Court would have to find Zelermyer's affidavit to be false or misleading. This the Court is not prepared to do. What is clear is that there is a genuine issue of material fact as to whether plaintiff's actions at the time of the conclusion of the Tempro action constituted a waiver of any claims in relation to that action. Thus, counts 4 and 5 cannot be dismissed at this time.

F) Application of Res Judicata to Counts 21–23

Defendants contend that counts 21–23 of the amended complaint are barred by the res judicata effect of the dismissal with prejudice of an action brought in the Superior Court of New Jersey entitled *Sawyer Savings Bank v. Jeffrey Schonberger.* That action arose out of a loan granted to plaintiff Schonberger by the Sawyer Savings Bank which was secured by the house of his son, Jeffrey. In that case, Jeffrey Schonberger interposed a counterclaim against Sawyer Savings Bank ("Sawyer")

which contained allegations similar to those now averred in counts 21–23 of the amended complaint in the instant action. *See* Defendants' Exhibit 30. At the conclusion of the Sawyer action, Jeffrey Schonberger agreed to a dismissal with prejudice of his counterclaim against Sawyer. Defendants now contend that voluntary dismissal with prejudice should be given *res judicata* effect against counts 21–23.

In general, "[r]es judicata, or claim preclusion, prevents the subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined." *Balderman v. U.S. Veterans Administration,* 870 F.2d 57, 62 (2d Cir.1989) (citing *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 727 (2d Cir.1981); Restatement (Second) of Judgments § 24 (1982)). "A federal court must give a state court judgment the same 'preclusive effect' the judgment would have had under the law of the state in which the judgment was rendered." *Ruiz v. Commissioner of Dep't of Transportation,* 858 F.2d 898, 902 (2d Cir. 1988) (citing *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)). In the instant case, the Court must look to see if New Jersey courts would give the preclusive effect to Jeffrey Schonberger's dismissal of his counterclaim as is sought by defendants in the instant action.

■ It is clear under New Jersey law that a consent judgment has the same *res judicata* effect as any other judgment. *Muscarelle v. Dep't of Transp.,* 175 N.J. Super. 384, 418 A.2d 1310, 1316 (A.D.1980), *appeal dismissed,* 87 N.J. 321, 434 A.2d 73 (1981). "[A] party may be bound by the result in a prior proceeding in which [he] had no opportunity to participate provided [he] was privy to a party in that case. But the fact that parties have similar interests in the outcome of litigation does not in itself establish a privity of interest for res

**4.** Defendants' Notice of Motion indicates that defendants wish this portion of their motion treated as one for summary judgment.

judicata purposes, as privity in this context requires some legal connection between the parties such a succession to the same rights to property." *Rutgers Casualty Ins. Co. v. Dickerson*, 215 N.J.Super. 116, 521 A.2d 373, 376 (A.D.1987).

The issue in the instant case is whether plaintiff can be bound by his son's decision to drop his counterclaim in the action brought by Sawyer. Despite defendants' argument to the contrary, a father is not automatically in privity to his son. Such a rule would be overbroad and would inevitably lead to inappropriate *res judicata* results.[5] However, the Court's inquiry need not end here. Plaintiff and Jeffrey Schonberger had a substantial similarity of interest in the action brought by Sawyer. That action was brought as a foreclosure action on a mortgage loan obtained by plaintiff in part to pay a portion the legal expenses incurred as a result of the arbitration between plaintiff and Dickinson. While the loan was in the form of a mortgage on Jeffrey Schonberger's house, it was guaranteed by plaintiff, *see* affidavit of Milton Schonberger, sworn to on January 16, 1990, ¶ 9, and the proceeds from the loan were used in part to satisfy costs in plaintiff's arbitration.

 There is no doubt that there is contractual privity between a primary debtor and a guarantor on a loan. There is a sufficient legal connection between the parties and identity of interest to justify the imposition of *res judicata*. *See Rutgers Casualty, supra.* Plaintiff does not contest that the counterclaim in the action brought by Sawyer makes the same claim as contained in counts 21–23 of the instant action. Finally, it is clear under New Jersey law that a voluntary dismissal with prejudice is a sufficient judgment to invoke *res judicata*. Accordingly, the Court finds that *res judicata* should be imposed in the instant action. Counts 21–23 are dismissed under the doctrine of *res judicata* due to the voluntary dismissal with prejudice of the counterclaim containing the same alle-

gations in the action entitled *Sawyer Savings Bank v. Jeffrey Schonberger.*

G) Abstention

Defendants have argued that to the extent the Court does not dismiss all of claims 11 through 20 and 24, the Court should stay its proceedings on those claims pending resolution of a parallel action brought by defendants seeking to enforce an attorneys' lien against the arbitration award granted plaintiff. Abstention by a federal court in the face of a parallel state proceeding is governed by the Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "The *Colorado River* doctrine is a prudential one. The mere fact of concurrent state and federal proceedings 'does not, without more, warrant staying exercise of federal jurisdiction.' *Colorado River*, 424 U.S. at 816 [96 S.Ct. at 1245]. In fact, 'the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....' *Id.* at 817 [96 S.Ct. at 1246]. Rather, '[o]nly the clearest of justifications will warrant dismissal.' *Id.* at 819 [96 S.Ct. at 1247]." *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 602 (2d Cir.1988).

 The *Colorado River* doctrine was more fully developed in *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Application of the *Colorado River* doctrine requires that the party seeking abstention demonstrate to the Court that the following six factors indicate that abstention is appropriate: (1) assumption of jurisdiction over a *res* ; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights. *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir.1989). However, determining whether abstention is appropriate "does not rest on a mechani-

---

**5.** *Most obviously, it would be inappropriate to invoke res judicata in actions involving a father and a son where those relatives were estranged or had significantly different interests.*

cal checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone, supra,* 460 U.S. at 16, 103 S.Ct. at 937.

■ The Court agrees with defendants that an analysis of the six *Colorado River* factors militates in favor of abstention in this action. The first two factors are insignificant in the instant action. There is no *res,* and there is no significant difference in convenience between the fora. The parallel state action is occurring across the street from this Court. An analysis of the third factor, avoidance of piecemeal litigation, requires a conclusion in favor of abstention. Schonberger has raised as defenses in the state action claims which are almost identical to those contained · in counts 11–20 and 24. A resolution of those defenses by the state court will have a collateral estoppel effect on this action which should reduce significantly the breadth and complexity of the action before this Court. Further, there is some danger of inconsistent judgments on plaintiff's claims if abstention is not granted. Thus, wise judicial administration militates in favor of abstention.

The Court further finds that examination of the fourth and fifth factors also indicates that abstention is appropriate. The state action was filed long before the instant action. Indeed, the case at bar was filed on the eve of a potentially dispositive hearing in the state action, and plaintiff used the filing of the instant action to delay the state court hearing. Further, it is uncontested that the rule of decision in the instant case will be provided by New York law. Finally, the Court finds that, as per the sixth factor, plaintiff's interests will not be unduly harmed by the granting of defendants' abstention motion. This Court is not dismissing plaintiff's claims, only delaying their resolution until after determination of the pending state court action. Once that action has been finally resolved in the state courts, this Court will decide the issues before it, if such resolution remains appropriate at that time. Thus, the Court will abstain from consideration of counts 11–20 and 24 pending final state court resolution of the matter before Justice David Saxe of the New York State Supreme Court, New York County, entitled *Serchuk, Wolfe & Zelermyer v. Schonberger,* Index No. 26878/87.[6]

**H) Plaintiff's Motion to Amend the Complaint**

■ Plaintiff has cross-moved for permission to file a second amended complaint pursuant to Fed.R.Civ.P. 15(a). Rule 15(a) "sets forth a policy in favor of granting leave to amend, stating that 'leave to amend shall be freely given when justice so requires.'" *Jaser v. New York Property Insurance Underwriting Ass'n,* 815 F.2d 240, 243 (2d Cir.1987). A motion to amend should be denied only for good reason such as "'undue delay, bad faith, futility of amendment, and perhaps, most important, the resulting prejudice to the opposing party.'" *Richardson Greenshields Secur., Inc. v. Mui–Hin Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987), *quoting State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986), *citing Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Mere delay alone will not suffice as a basis for the district court to deny the right to amend. *Richardson Greenshields, supra,* 825 F.2d at 653 n. 6. Parties have been permitted to assert new claims long after they acquired the facts necessary to support such claims, *see, e.g., Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y.1970), and have even been permitted to amend a complaint on the eve of trial. *See Hanlin v. Mitchelson,* 794 F.2d 834 (2d Cir.1986).

Plaintiff has proposed adding two new counts to his litany of charges, and has

6. Defendants have also moved for dismissal of the entire action for lack of subject matter jurisdiction because defendants contend that the jurisdictional minimum of $50,000 in a diversity action has not been met. The Court does not agree. Sufficient claims remain in place so that upon a fair reading of the amended complaint, the jurisdictional minimum has been met.

provided defendants' counsel and the Court with a copy of his proposed second amended complaint. Defendants strenuously oppose the granting of leave to file this second amended complaint on the grounds that the proposed new counts are without merit. The Court notes that the holdings of this opinion related to attorneys' fees applies to the proposed new counts as well. Further, the Court cannot find that, on their face, the proposed amendments are futile. The majority of defendants' objections to the new claims go to the merits and should not, under the teaching of *Richardson Greenshields*, be decided on a Rule 15(a) motion.

The Court's discussion of plaintiff's cross-motion cannot end here. Plaintiff in his cross-motion seeks to file the proposed second amended complaint attached to his notice of motion. While permission is granted to file a second amended complaint containing the proposed new causes of action, permission to file the proposed second amended complaint attached to the notice of cross-motion is denied. Plaintiff is instructed to prepare a second amended complaint consistent with this opinion. Such a second amended complaint shall be filed within twenty (20) days of this opinion.

I) Sanctions

The parties have cross-moved for imposition of sanctions pursuant to Fed.R.Civ.P. 11. As the Court does not find that either plaintiff's complaint or defendants' motion are wholly frivolous, the cross-motions for sanctions are denied.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part.

Count 10 of the amended complaint is dismissed with prejudice as untimely.

Any independent claims for intentional infliction of emotional or physical distress or for injury to reputation are dismissed with prejudice as untimely.

Plaintiff's demand for the award of attorneys' fees on any and all of his claims is dismissed.

Counts 21–23 are dismissed with prejudice under the doctrine of *res judicata*.

Defendants' motion for a stay of counts 11–20 and 24 of the amended complaint is granted. This Court will abstain from further proceedings pending final resolution of the related action currently before the New York State Supreme Court, New York County. Defendants are ordered to provide the Court with a written update as to the progress of those proceedings within ten (10) days of this order, and shall provide further written updates every sixty (60) days thereafter. Discovery shall proceed as to those counts not stayed or dismissed by this opinion and order.

Plaintiff's motion to file a second amended complaint adding two new counts is granted. Plaintiff shall file a second amended complaint consistent with this opinion and order within twenty (20) days.[7]

The parties' cross-motions for the imposition of sanctions is denied.

The parties shall appear for a regular status conference in this matter to discuss the progress of discovery on the claims not stayed on September 14, 1990 at 3:00 p.m. in Courtroom 36 of the United States Courthouse, New York, New York.

SO ORDERED.

## ON MOTION FOR REARGUMENT

Defendants in the above-captioned action have moved for reargument, pursuant to Local Civil Rule 3(j)[1], of two portions of the Court's Opinion and Order in this matter, dated July 10, 1990. *Schonberger*

---

7. The parties are reminded by the Court that the filing of an amended complaint that is inconsistent with a court order limiting the scope of the claims may be considered a violation of Fed.R. Civ.P. 11. Similarly, the filing of a supplementary motion to dismiss portions of an amended complaint previously upheld by the Court can

be considered a Rule 11 violation, unless the motion at issue is sufficiently novel as to be unrepetitive of the earlier filing.

1. Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York.

*v. Serchuk,* 88 Civ. 7094 (PKL) (S.D.N.Y. July 10, 1990). In particular, defendants urge the Court to reconsider its decision to deny defendants' motion to dismiss any negligent infliction of emotional distress claims contained in Counts 1–9 of plaintiff's amended complaint, and to dismiss plaintiff's claims for lost profits.[2]

## DISCUSSION

In light of the Court's recent extensive opinion in this matter, familiarity with the factual background of this action is assumed.

 The standard is clear on a motion for reargument. "The only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court." *Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.1988) (*quoting* Local Civil Rule 3(j)); *see also Bozsi Ltd. Partnership v. Lynott,* 676 F.Supp. 505, 509 (S.D.N.Y.1987); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 611 F.Supp. 281, 283 (S.D.N.Y. 1985); *United States v. International Business Machines Corp.,* 79 F.R.D. 412, 414 (S.D.N.Y.1978).

 The concerns reflected by these standards are sound. The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided. *See, e.g., Ruiz v. Commissioner of the Dep't of Transp.,* 687 F.Supp. 888, 890 (S.D.N.Y.1988); *Morgan Guaranty Trust Co. v. Garrett Corp.,* 625 F.Supp. 752, 756 (S.D.N.Y.1986). Furthermore, a party making a motion for reargument may not, under Civil Rule 3(j), advance new facts, issues or arguments

not previously presented to the Court. *See Weissman v. Fruchtman,* 124 F.R.D. 559, 560 (S.D.N.Y.1989) (*citing Morgan Guaranty, supra,* 625 F.Supp. at 756); *Ruiz, supra,* 687 F.Supp. at 890. The Court will address each of defendants' arguments in turn.

### A) Lost Profits

Defendants assert that the Court misapplied New York law regarding recovery of lost profits. Based on defendants' assertions, the Court has reviewed the record before it, and concludes that it fully considered all facts and law relevant to plaintiff's claim for lost profits in it prior opinion. *Schonberger, supra,* at 114. Thus, defendants' motion for reargument on this issue is denied.

### B) Negligent Infliction of Emotional Distress

Defendants assert that plaintiff's apparent independent claims for negligent infliction of emotional distress contained in Counts 1–9 of the amended complaint should be dismissed as untimely. Defendants further assert that a claim for negligent infliction of emotional distress cannot be maintained within a claim for attorney malpractice.

The Court has reviewed the moving papers in this action and found that defendants did not, in their memorandum of law, move to have any independent claims for negligent infliction of emotional distress dismissed as untimely. It is improper to raise issues on a motion for reargument which were not included in the original moving papers. Thus, defendants' motion for reargument of the issue of the timeliness of claims for negligent infliction of emotional distress are denied.[3]

---

**2.** Pursuant to Local Civil Rule 3(c)(2), defendants' Notice of Motion set August 2, 1990 at 9:30 a.m. as the return date for the instant motion. As of the date and time of the return date, the Court has received no response from plaintiff to the instant motion, nor has plaintiff otherwise attempted to contact the Court. Thus, the Court considers the motion fully submitted on defendants' papers alone.

**3.** Plaintiff should be aware, however, that the Court's inability to reach the timeliness issue on the instant motion does not mean that these claims can be repled freely. Defendants' instant application has alerted plaintiff to their position in this regard. Fed.R.Civ.P. 11 imposes upon an attorney an obligation to investigate the validity of claims placed before this Court. If it is clear, upon investigation, that an action is untimely under the applicable statute of limitation, or if

Defendants are correct that New York law does not permit claims for negligent infliction of emotional distress within an ordinary legal malpractice claim. In order to maintain such a claim, plaintiff must allege that defendants' conduct unreasonably threatened plaintiff's physical safety in some way. *Green v. Leibowitz*, 118 A.D.2d 756, 757–78, 500 N.Y.S.2d 146, 148–49 (2d Dep't 1986). Plaintiff has not done so. Accordingly, the Court will modify its previous opinion to indicate that, to the extent plaintiff seeks to recover damages for negligent infliction of emotional distress as a part of his legal malpractice claims, those claims for damages are dismissed.

## CONCLUSION

Defendants' motion for reargument is denied in part and granted in part. Defendants' motion for reargument regarding plaintiff's claims for lost profits and the timeliness of plaintiff's apparently independent claims for negligent infliction of emotional distress are denied.

Defendants' motion for reargument on the availability of damages for negligent infliction of emotional distress as part of claims for legal malpractice is granted. To the extent plaintiff claims damages for negligent infliction of emotional distress as part of his claims for legal malpractice, those claims for negligent infliction of emotional distress damages are dismissed.

Nothing in this Order should be understood to modify the Court's Opinion and Order dated July 10, 1990, except to the extent indicated above.

SO ORDERED.

---

the attorney makes no effort to investigate the timeliness of his client's claims, particularly after the timeliness has been questioned by the opposing party, that attorney may be subject to sanctions under Rule 11. *See O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir.1990); *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989); *International Shipping, S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.1989).