**John PADILLA, Plaintiff,**

v.

**MAERSK LINE, LTD., Defendant.**

**No. 07 Civ. 3638(PKL).**

United States District Court, S.D. New York.

June 24, 2009.

Mitchell S. Sternbach, Rockville Centre, NY, Dennis Michael O'Bryan, Howard Michael Cohen, O'Bryan Baun Choen Cuebler Karamanian, Birmingham, MI, Roberta Ellen Ashkin, Law Offices of Roberta Ashkin, New York, NY, for Plaintiff.

John Joseph Walsh, Justin Thomas Nastro, Freehill, Hogan & Mahar, LLP, New York, NY, for Defendant.

### MEMORANDUM ORDER

LEISURE, District Judge.

Defendant Maersk Line Ltd. ("Maersk") moves pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 6.3") for reconsideration of the Court's decision granting summary judgment in favor of plaintiff John Padilla ("Padilla"). For the following reasons, defendant's motion is DENIED.

## BACKGROUND

### I. Factual and Procedural History

The full factual and procedural history of this case is set forth in the Court's March 12, 2009 Opinion and Order, with which the Court assumes familiarity. *See Padilla v. Maersk Line Ltd.*, 603 F.Supp.2d 616 (S.D.N.Y.2009) (Leisure, J.). Following is an abbreviated discussion of the facts and procedural history pertinent to this motion.

Padilla was hired as Chief Cook aboard defendant's vessel, the Maersk Arkansas. The terms and conditions of Padilla's em-

ployment were governed by a collective bargaining agreement known as the Standard Freightship Agreement (the "CBA"). After eight days of service aboard the Maersk Arkansas, Padilla became unfit for duty, and was discharged and repatriated. Maersk paid Padilla unearned wages at a daily rate of $101.73, along with maintenance payments of $16 per day, from Padilla's discharge until the voyage ended on February 26, 2007. Padilla subsequently contacted Maersk to request payment of overtime wages that he would have earned but for his injury, but Maersk denied his request, stating that it did not factor overtime into unearned wage calculations.

## II. The Court's March 12, 2009 Opinion and Order

In the March 12, 2009 Opinion and Order, Padilla's motion for summary judgment was granted. Specifically, the Court held that, as a matter of law, average overtime pay is factored into unearned wage calculations for purposes of an incapacitated seaman's entitlement to maintenance and cure under general maritime law in order for a seaman to recover in full the compensation that he would have earned but for his injury. *Id.* at 620–21, 626–27. In addition, the Court held that Padilla's general maritime right to overtime pay as part of his unearned wages was not contractually modified and could be reasonably ascertained based on his average overtime wages earned prior to his injury. *Id.* at 620–21, 627–29. Since the parties raised no genuine issue of fact as to the amount of overtime that Padilla performed prior to his injury, nor did they dispute the date of his discharge or the date the Maersk Arkansas's voyage ended, the Court calculated that Padilla was entitled to recover an additional $13,478.40 as unearned wages. *Id.* at 629–30.

## DISCUSSION

### I. Motion for Reconsideration Standards

Local Rule 6.3 permits a party to move for reconsideration of an order resulting in a judgment within ten days of entry of the judgment. S.D. & E.D. N.Y. Local R. 6.3. District courts in the Second Circuit have held that "[s]uch motions are narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music. Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 391–92 (S.D.N.Y.2000) (Sprizzo, J.) (citing *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996)); *see also Anglo Am. Ins. Group. P.L.C. v. CalFed Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y.1996) (same).

Because the reviewing standard is strict, timely motions for reconsideration are usually denied unless the movant offers controlling decisions or facts that the Court originally overlooked, and that the movant could reasonably believe would have altered the Court's original decision. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y. 1990) (Leisure, J.)); *see also In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir.2003) (citing *Shrader* and affirming a denial of a motion for reconsideration where petitioners presented "neither factual matters nor controlling precedent [the Court] had overlooked that would have changed its decision"). Any controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the Court in the underlying motion. *Range Road Music*, 90 F.Supp.2d at 392; *Davis v. Gap. Inc.*, 186 F.R.D. 322, 324 (S.D.N.Y.1999). A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already

decided issue. *Davis,* 186 F.R.D. at 324 ("[T]he court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment."); *Carolco Pictures Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988) (denying a motion for reargument where movant cited in its motion papers for the first time two cases supporting its arguments). Other limited circumstances for granting a motion for reconsideration include where the movant demonstrates that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice. *Virgin Airways v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992).

## II. *Motion for Reconsideration Standards as Applied to Maersk's Arguments*

■ Since Maerks's arguments in this motion are essentially an appeal of the Court's holding, its motion for reconsideration is improper. Maersk fails to cite any applicable controlling law, key facts, or documents in the summary judgment record that the Court initially overlooked. Therefore, Maersk's motion for reconsideration must be denied.

In particular, Maersk claims that the Court overlooked *Sorensen v. City of New York,* 202 F.2d 857 (2d Cir.1953), which Maersk argues negates any maritime law requirement of overtime pay. (Def.'s Mem. 1.) In addition, Maersk claims that 46 U.S.C. § 8104(d), which prohibits ship owners from requiring seafarers to work overtime, precludes the Court from including overtime in unearned wage calculations. (*Id.* at 1, 5.) Notwithstanding that these citations were not included in Maersk's opposition brief and are inapplicable to this case, Maersk simply attempts to recast an argument it presented on summary judgment in a different light. By including these citations, Maersk implicitly argues that, since overtime cannot be required of seamen during their service aboard a vessel, overtime that Padilla would have earned but for his injury is too speculative to be determined on summary judgment. The Court previously considered and rejected this argument. The issue that Maersk seeks to relitigate may only be properly addressed on appeal. *See Shrader,* 70 F.3d at 257.

■ In addition, Maersk contends that "a finding that overtime must be included in unearned wages based on a custom of paying overtime cannot be a matter law[,] it must be a matter of agreement and hence, the meaning of 'unearned wages' must be determined by a factual analysis of the agreement[,] including what was customarily paid as unearned wages by ship owners to seamen who have been repatriated before the end of the voyage." (Def.'s Mem. 3.) Therefore, Maersk's motion for reconsideration appears to set forth two somewhat contradictory arguments not made on summary judgment: First, Maersk appears to argue that whether overtime pay is included in the measure of unearned wages must be specified in the CBA (*see also id.* at 6 ("[T]he meaning of 'unearned wages' must be ascertained from the collective bargaining agreement which is a matter of fact.")); second, Maersk appears to argue that, because the CBA is silent as to the inclusion of overtime pay for seamen repatriated before the end of voyage, the Court must look to the custom among ship owners with respect to payment of unearned wages, which is a fact-based inquiry that cannot be determined on summary judgment.[1]

---

1. The Court notes for Maersk's benefit that, according to the Second Circuit, "[i]f the court determines that 'the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and those terms may be the basis for summary judgment.'" *Am. Home Assurance*

(*See also id.* at 13 ("It is therefore a question of fact whether the term unearned wages includes overtime.").)

■ Contrary to Maersk's assertions, as this Court discussed in its March 12, 2009 Opinion and Order, a shipowner's liability for unearned wages arises under federal common law, not as a matter of contract. The general maritime law of the United States provides an injured seaman with wages he would have earned if not for the onset of his injury or illness. *Padilla,* 603 F.Supp.2d at 622–23 (citing cases). On summary judgment, the Court determined as a matter of law that, where a seaman reasonably expects to receive overtime compensation during his service aboard the ship, the unearned wage component of a seaman's maintenance and cure remedy includes average overtime pay in order to place him in the same position he would have been in had he continued to work. *See id.* at 625–27. The Court acknowledged in its decision that a CBA—not shipping articles—could, as a matter of law, limit, but not abrogate, the computation of unearned wages owed to an incapacitated seaman. *See Padilla,* 603 F.Supp.2d at 623–24, 627–29. However, the CBA governing the terms of Padilla's employment with Maersk contained no such limitation, as Maersk conceded on summary judgment.

Maersk's arguments are also meritless in that, on summary judgment, Maersk did not—and still does not—identify any genuine disputed issues of fact. It is unambiguous and undisputed that the CBA requires overtime to be paid to a Chief Cook during his service aboard the ship in certain situations, such as for work performed beyond eight hours on weekdays, or for certain tasks like sougeeing. The parties did not dispute that Padilla earned overtime pay in excess of his base wages prior to his injury, or that he performed certain tasks like sougeeing that would have been paid at the overtime rate, or that his replacement man earned overtime pay in excess of his base wages while in service aboard the ship through the end of voyage. And the parties did not dispute the period of time during which unearned wages were to be paid. In sum, Maersk points to nothing that undermines the Opinion's conclusion that no genuine issue of fact exists with respect to the measure of Padilla's unearned wages. Accordingly, the amount of overtime compensation owed to Padilla as part of his general maritime law right to unearned wages was readily ascertainable on summary judgment.

## CONCLUSION

For the foregoing reasons, Maersk's motion for reconsideration of the Court's

Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir.2006) (quoting *Dusè v. Int'l Bus. Machs. Corp.,* 252 F.3d 151, 158 (2d Cir.2001)). "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Id.* (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996)). However, a contract's language is not ambiguous simply because the parties urge different interpretations, or if one party's view "strain[s] the contract language beyond its reasonable and ordinary meaning." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 598 (2d Cir.2005) (internal quotation marks and citations omitted). Since the meaning of the overtime provisions in the CBA were unambiguous and undisputed, and Maersk conceded that the CBA did not purport to limit payment of unearned wages, the terms of the CBA were appropriately considered on summary judgment.

March 12, 2009 Opinion and Order is DE-NIED.

**SO ORDERED.**