UNITED STATES of America, Appellee,

v.

Oliverio CRUZ, Appellant.

No. 177, Docket 87–1205.

United States Court of Appeals,
Second Circuit.

Argued Sept. 29, 1987.

Decided Nov. 20, 1987.

Darrell L. Paster, New York City, for appellant.

John J. Gallagher, Asst. U.S. Atty., Eastern District of New York, Brooklyn, New York (Andrew J. Maloney, U.S. Atty., for the Eastern District of New York, David V. Kirby, Asst. U.S. Atty., Eastern District of New York, Brooklyn, New York, of counsel), for appellee.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Eastern District of New York, Dearie, J., dated January 7, 1987, following a jury trial for conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 (1982). Cruz claims that the district court should have granted his motion to suppress certain post-arrest statements and evidence found during a search of his truck following a *de facto* arrest without probable cause. Cruz contends that his warrantless arrest and the subsequent warrantless search and seizure of his truck

were in violation of his Fourth Amendment rights and the evidence should have been suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Because we conclude that there was probable cause to arrest Cruz for drug conspiracy charges at the time his truck was stopped on the New Jersey Turnpike, and that the subsequent search of Cruz's vehicle was justified under the automobile exception to the warrant requirement, *see Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), we affirm the judgment of conviction.

## BACKGROUND

### A. *The First Surveillance Effort*

In August 1986, a Drug Enforcement Agency (DEA) agent in Queens, New York was investigating a man for suspected drug trafficking. The agent observed the subject of his investigation dialing numbers on a pay telephone and then hanging up, in such a manner as to suggest to the agent that the man was making phone calls to beepers. The agent testified that in his experience, calling beepers is a very common practice among narcotics dealers. A second man then drove up to the location under surveillance in a white Volkswagen Beetle that was in immaculate condition and had New Jersey license plates. The driver got out, briefly spoke with the man who had been placing the telephone calls, and then returned to his car and drove away. Shortly thereafter a third man arrived at the scene and spoke for a few minutes with the man who had been making the telephone calls, and the two men exchanged packages. The agent concluded from these observations that some type of narcotics transaction had taken place, although no arrests were made at that time.

### B. *The Second Surveillance Effort*

Approximately six weeks later, on September 23, 1986, the same DEA agent spotted a man driving a white Volkswagen Beetle that was in immaculate condition with New Jersey license plates in Queens, New York. The agent concluded that this vehicle was the same one that he had observed previously; he also believed that the same person was driving the Volkswagen on both occasions, although he was not absolutely certain. He learned later that day that the driver of the Volkswagen was Cesar Cruz, the brother of appellant Oliverio Cruz. Based on the agent's prior observations, he decided to conduct a surveillance of the driver of the Volkswagen with the assistance of other DEA agents.

While the agents were conducting this second surveillance, Cesar Cruz double parked the Volkswagen outside of a house in Queens, went inside and emerged approximately thirty seconds later, carrying a very heavy suitcase which he placed in the trunk of the Volkswagen. He then reentered the house, and after a very short time again emerged, this time carrying with him several unassembled cardboard boxes which he also placed in the Volkswagen.

Cesar Cruz then drove the Volkswagen to another location in Queens, where he met several individuals, one of whom was later identified as the defendant-appellant Oliverio Cruz. The group conversed for several minutes and then separated. Oliverio Cruz drove away in a tractor trailer truck with Florida license plates, and Cesar Cruz drove away in the white Volkswagen. As the two vehicles travelled together to Perth Amboy, New Jersey, they exchanged positions in the lead. In Perth Amboy, Cesar Cruz parked the Volkswagen inside an auto repair garage, and Oliverio Cruz parked the truck on the street by the garage.

The agents continued their surveillance efforts at the repair garage for several hours. During this time, the suspects removed two long cylindrical objects from the trailer portion of the truck, and carried them into the garage. The men also loaded a plywood panel into the trailer, and then subsequently removed the panel, before they later carried it again into the trailer. Four heavy cardboard boxes were loaded into the trailer. Throughout this surveillance, the agents heard hammering and prying noises, sounds associated with con-

struction work. The agents observing these activities concluded that the men were building a hiding place inside the trailer for the four cardboard boxes.

Participants in the activities at the auto repair shop twice left the scene. On one occasion, Gustavo Fernando Cruz drove to a home in Woodbridge, New Jersey. He entered the house and then came out in approximately ten minutes carrying a plain brown grocery bag, the top of which was rolled over. He then drove back to the auto garage area, where the others were testing the lights on the truck. After these tests, Cesar, Oliverio and Gustavo Fernando Cruz travelled in the Volkswagen to a nearby auto parts store. When they came out of the store, Oliverio Cruz was carrying a brown paper bag. They then drove to the same house in Woodbridge, New Jersey where Gustavo Fernando Cruz had previously been and went inside the house for a few minutes before returning to the auto repair garage. While the men were back at the garage area, the lights on the truck were checked again. After dark, Cesar Cruz drove the Volkswagen to Queens, New York, and Oliverio Cruz drove the tractor trailer truck south on the New Jersey Turnpike. Both vehicles were followed by DEA agents.

After Oliverio Cruz had driven for about a mile on the New Jersey Turnpike, he pulled the truck over to the side of the highway by an overpass and turned off the truck's lights. He then got out of the truck and stood next to the cab of the truck and watched southbound traffic for approximately five minutes. The agents interpreted Cruz's stop as an effort to see if he was being followed. Cruz then returned to his truck, and proceeded south on the highway at approximately 75–80 miles per hour.

The agents requested New Jersey state troopers to assist them in stopping Cruz's truck. Two marked state police cars and one unmarked police van responded to this request. The state troopers activated their roof lights and sirens to signal Cruz to pull over to the side of the highway. Cruz, who was driving in the right lane of the turnpike, did not immediately pull his truck over to the right shoulder, but instead veered into the middle lane of the highway, in which one of the police cars was travelling. The officers then positioned their police cars in such a manner as to force Cruz's truck to the side of the highway.

When the truck was on the shoulder of the road, uniformed state police officers approached Cruz. It quickly became apparent that Cruz did not speak English and an officer who spoke Spanish was called upon to translate. The officer asked Cruz for his license and registration, which Cruz supplied. The officers then decided that they should move from the shoulder of the interstate highway to a safer location. They decided to move all of the vehicles to a New Jersey State Department of Transportation (DOT) garage area about a half mile south of where the stop had occurred. Cruz was "patted down," handcuffed, and placed in the back seat of a police cruiser. An investigator who was an experienced operator of tractor trailer trucks entered the cab of Cruz's truck in order to move the truck to the DOT garage area. As he entered the cab, he noticed that there was an open flight bag on the front seat of the cab. He could see that there were two objects in the flight bag which were wrapped in a type of tape that in his experience is commonly used to package cocaine.

After arrival at the DOT garage area, Cruz remained handcuffed in the back seat of the cruiser. The troopers issued several summonses to Cruz for various traffic offenses including speeding, unsafe lane changing and tailgating. Approximately ten minutes later, a detective initiated a conversation with Cruz concerning whether Cruz would consent to the search of his truck. Within a few minutes Cruz signed a pre-printed DEA consent form that was printed in Spanish, agreeing to the search of his truck.

The search of the truck was not conducted immediately after the consent was obtained, however, because the DEA agents were awaiting the arrival of their supervisor. After about an hour, the officers at the DOT garage learned that Cesar Cruz had been arrested in Queens and a quantity

of cocaine and money had been found in connection with the arrest. Oliverio Cruz then was told that he was under arrest. The officers searched the truck and found four cardboard boxes hidden behind a false wall in the truck. The boxes contained $3,261,128 in currency of varying small denominations. Approximately $70,000 in cash was found in the packages wrapped in tape that were in the cab of Cruz's truck.

After Cruz was placed under arrest, an agent read Cruz his *Miranda* rights in Spanish. Cruz then admitted that he knew that there was money in the truck but said he did not know how much. He also stated that he had been told to drive the truck to Miami and park it in an unspecified location where it would be picked up by someone and later returned to Cruz.

### C. *The District Court Opinion*

On December 10 and 11, 1986, the district court held a hearing on Cruz's motion to suppress the evidence found in the truck and his post-arrest statements. On January 7, 1987, the court issued an order denying the motion. The district court found that the testimony of the agents was credible, and concluded that the agents were justified in stopping Cruz while he was travelling on the New Jersey Turnpike. Specifically, the court held that considering all of the circumstances, the agents had an articulable basis for conducting an investigative stop of Cruz's truck at that time. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). In addition, the district court found that there were important safety reasons for handcuffing Cruz and moving Cruz and his truck to the DOT garage area. Although the district court recognized that the investigative stop may have become a *de facto* arrest of Cruz at some point because of the length and conditions of Cruz's detention at the DOT garage area, it held that the evidence was nonetheless admissible under three different theories: (1) Cruz had signed a valid consent to the search before the *de facto* arrest, if any, had occurred; (2) the officers had probable cause to search the truck when the investigator observed the packages wrapped in tape in the cab of Cruz's truck in light of the surveillance effort six weeks previously and the events that the agents had observed on September 23; and (3) the officers had probable cause to search the truck based on the information they received concerning the arrest of Cesar Cruz and the seizure of cocaine in connection with that arrest.

## DISCUSSION

■ The district court's denial of Cruz's motion to suppress the evidence was not error if the warrantless arrest of Cruz and the warrantless search of his vehicle were proper. A warrantless arrest is justified if the police have probable cause when the defendant is put under arrest to believe that an offense has been or is being committed. *United States v. Fox*, 788 F.2d 905, 907 (2d Cir.1986). Although the district court concluded that the officers had probable cause to arrest Cruz on drug charges when the agent observed the packages wrapped in tape in the cab of the truck, we conclude that in light of the district court's findings of fact, there was already probable cause to arrest Cruz when his truck was pulled over to the shoulder of the New Jersey Turnpike.

■ In order to establish probable cause, it is not necessary to make "a prima facie showing of criminal activity" or to demonstrate that it is more probable than not that a crime has been or is being committed. *United States v. Travisano*, 724 F.2d 341, 346 (2d Cir.1983). Rather, probable cause for arrest "exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. at 162, 45 S.Ct. at 288). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal

rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). It " 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Furthermore, a suspect's actions that suggest "a consciousness of wrongdoing" can contribute to a finding of probable cause. *See United States v. Vasquez,* 638 F.2d 507, 521–22 (2d Cir.1980) (holding that there was probable cause for arrest where officers knew defendants had recently been with suspected drug dealer, officers saw defendants' car being maneuvered so as to indicate that surveillance had been detected, and when officers approached car, defendant attempted to place package under car and then pulled the package back inside the car and closed and locked the car door), *cert. denied,* 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981).

▮ Applying these standards to the factual findings made by the district court, we conclude that the law enforcement officers had probable cause to arrest Cruz at the time they stopped his truck on the New Jersey Turnpike. The determination of whether probable cause to arrest exists can be based on the collective knowledge of all of the officers involved in the surveillance efforts because the various law enforcement officers in this investigation were in communication with each other. *See United States v. Tussa,* 816 F.2d 58, 63 (2d Cir.1987). The information that the agents had available to them at the time of arrest included the results of the prior surveillance efforts of the DEA agent which suggested that Cesar Cruz was involved with narcotics activity. In addition, the agents had observed the loading of the four heavy boxes into the trailer portion of the tractor trailer truck from Florida; the extensive construction activity performed on the trailer that led the agents to believe that a hiding place for the boxes was being prepared; the suspects' preoccupation with ensuring that the lights of the truck were functioning properly, thus lessening the chances of being stopped by the police; Cruz's suspicious behavior in stopping his truck one mile after he had entered the New Jersey Turnpike, then turning off the truck's lights and standing by the cab of his truck for several minutes while he intently watched oncoming traffic; and Cruz's evasive driving when the police attempted to stop his truck. Although no single fact was sufficient by itself to establish probable cause, the totality of the circumstances as appraised by experienced drug enforcement agents was sufficient to support Cruz's arrest at the time the truck was stopped. *See Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2327 (noting that a totality of the circumstances analysis has traditionally been applied when making probable cause determinations).

▮ The warrantless search of Cruz's truck was also lawful under the automobile exception to the warrant requirement. This exception to the Fourth Amendment's warrant requirement was established in *Carroll,* where the Supreme Court held that when police officers have probable cause to believe that a vehicle contains contraband, the officers can conduct a warrantless search of the automobile without violating the Fourth Amendment. 267 U.S. at 149, 45 S.Ct. at 283. This exception also applies to vehicles other than automobiles. *See, e.g., United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (upholding warrantless search of two pickup trucks). When police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle. *United States v. Ross,* 456 U.S. 798, 821 & n. 28, 102 S.Ct. 2157, 2171 & n. 28, 72 L.Ed.2d 572 (1982). A warrantless search of Cruz's truck was therefore proper because the officers had probable cause to believe that it contained contraband in light of the construction that they had observed the suspects perform on the trailer. The almost two hour delay before making the search was not unreasonable and does not change the result. "There is no re-

quirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. at 484, 105 S.Ct. 885 (holding that when officers had probable cause to search vehicles for contraband, a warrantless search three days after the trucks had been seized of packages unloaded from the vehicles was reasonable).

In light of our conclusion that the law enforcement agents had probable cause to arrest Cruz for drug conspiracy charges when his truck was stopped on the highway, and that the subsequent search of his truck was valid under the automobile exception to the warrant requirement, we need not consider whether Cruz's detention after his truck was stopped at some point turned into a *de facto* arrest or whether his consent to search the truck was voluntary. In addition, because we hold that Cruz's arrest was lawful, we need not consider appellant's argument that his post-arrest statements must be suppressed as the fruits of an unlawful arrest.

The judgment of conviction is affirmed.