## UNITED STATES

v.

### Oscar CARBAJAL–BRAND, et al., Defendants.

No. 97 CR. 802(SAS).

United States District Court, S.D. New York.

Jan. 15, 1998.

Richard B. Zabel, Jamie L. Kogan, United States Attorney's Office, New York City, for U.S.

Paul Testaverde, Elmhurst, NY, for defendant Abdala.

Roger J. Schwarz, New York City, for defendant Bernal–Diaz.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendants Enrique Leon Abdala ("Abdala") and Ricardo Bernal–Diaz ("Bernal–Diaz") move to suppress certain evidence recovered incident to their arrest. Abdala also moves to suppress statements made to law enforcement agents prior to his arrest. For the reasons stated below, Defendants' motions are denied.

## I. Introduction

The charges against the Defendants arose from an ongoing money laundering investigation of individuals seeking to transfer narcotics proceeds from New York to Columbia. In the course of that investigation, two undercover agents of the United States Customs Service ("Customs"), who were posing as money launderers, arranged to pick up a large sum of cash from an individual who would identify himself as "Code 113." On or about August 6, 1997, the agents were contacted by "Code 113" and arranged to pick up the money in the vicinity of 34th Street and 10th Avenue.

At approximately 5:00 p.m. on August 6, 1997, Customs agents and agents of the Drug Enforcement Administration (the "DEA") established surveillance in the vicinity of the parking lot of a McDonald's restaurant located at 34th Street and 10th Avenue. The undercover agents paged the individual who was supposed to drop the money off. Shortly thereafter, a light blue Cadillac ("Blue Cadillac") driven by Defendant Oscar Carbajal–Brand ("Carbajal–Brand") arrived in the vicinity of the McDonald's. Agents noticed that the Cadillac was being followed by a red Nissan Maxima ("Red Nissan") occupied by a number of Hispanic males. The Blue Cadillac parked in the McDonald's parking lot and Carbajal–Brand exited the car. In the meantime, the Red Nissan, which had appeared to drive around the block, reappeared with additional passengers and parked across 10th Avenue from the McDonald's.

Carbajal–Brand handed a key to the trunk of the Blue Cadillac to one of the undercover agents so that they could retrieve the money. Carbajal–Brand then walked away from the undercover agents. At approximately that time, a black Nissan Maxima ("Black Nissan") driven by defendant Alfredo Soto parked near the 34th Street entrance of the McDonald's parking lot. Soto got out of the car, had a brief exchange with a Hispanic male, Helvert Gomez ("Gomez"), and then reentered the Black Nissan, driving it into the parking lot.

As the undercover agents were attempting to retrieve the money from the trunk of the Blue Cadillac, Gomez and several other Hispanic males in the parking lot walked in the direction of the undercover agents. Gomez, who was brandishing a firearm, physically confronted the undercover agents, at which point shots were fired. During the ensuing gunfire, one of the Customs agents was shot in the upper leg and Gomez was shot and killed.

Defendant Bernal–Diaz was arrested as he ran north from the parking lot, crossing 34th Street. Defendant Abdala was arrested later in the evening of August 6, 1997 next to a parking lot in the vicinity of 33rd Street and Broadway, where agents had discovered what appeared to be the Red Nissan.

## II. Procedural Background

Defendants Abdala and Bernal–Diaz are the only remaining defendants in a six-defendant, eight-count indictment. Count Three of the indictment charges Abdala and Bernal–Diaz with conspiracy to assault a federal officer, in violation of 18 U.S.C. § 371. Count Four charges both defendants with conspiracy to commit robbery affecting commerce, in violation of 18 U.S.C. § 1951. Count Five charges both with illegal possession of a firearm, in violation of 18 U.S.C. §§ 924(c) and 2. Count Eight charges Bernal–Diaz with making false statement to federal law enforcement agents, in violation of 18 U.S.C. § 1001.

Abdala and Diaz made various motions to suppress statements, physical evidence, and intercepted electronic communications; to obtain discovery; to sever claims and defendants; and to dismiss Count Three of the indictment. A suppression hearing was held on December 5, 1997. This opinion decides only Defendants' motions to suppress evidence recovered incident to arrest and Abdala's motion to suppress pre-arrest statements. Defendants' other motions are addressed by the Court on the record on January 15, 1998.

### III. Abdala's Challenge to the Probable Cause for His Arrest

#### A. *Legal Standard*

 "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick,* 899 F.2d 169, 171 (2d Cir.1990) (citing cases). "The process does not deal with hard certainties, but with probabilities," and the evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (internal quotations omitted). Moreover, " 'where law enforcement authorities are cooperating in an investigation ..., the knowledge of one is presumed shared by all.' " *Calamia v. City of New York,* 879 F.2d 1025 (2d Cir.1989) (quoting *Illinois v. Andreas,* 463 U.S. 765, 771 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)). *See also United States v. Cruz,* 834 F.2d 47, 51 (2d Cir.1987).

#### B. *Discussion*

##### 1. *Findings of Fact*

Undercover agents surveilling the McDonald's parking lot observed the Red Nissan following the Blue Cadillac, driven by Oscar Carbajal–Brand. Hearing Transcript (Tr.) at 24. As the Blue Cadillac parked in the McDonald's parking lot, the Red Nissan appeared to circle the McDonald's, picking up and discharging passengers at different points.

Agent Monaco transmitted a description of the Red Nissan and its license plate number over the radio, stating that the vehicle contained approximately four male Hispanic passengers. Tr. at 24. Later in the surveillance, Detective Perez sighted the Red Nissan on 11th Avenue between 34th and 35th Streets, at which point it contained approximately five Hispanic men. Tr. at 117–19. At another point during the surveillance, Agent Mason saw the Red Nissan stopped at a light on the corner of 33rd Street and 10th Avenue. Tr. at 24–28.

When Mason saw the Red Nissan, she was surveilling the McDonald's from a car that was parked on the northeast corner of 33rd Street and 10th Avenue. Tr. at 17, 26. The Red Nissan drove west on 33rd Street toward 10th Avenue, and stopped for approximately 10 seconds at the corner of 33rd and 10th, directly beside Agent Mason's vehicle. Tr. at 26–27, 50–51. Mason observed that the Nissan contained only two occupants, and was able to see the face of the driver, whom she later identified as Abdala. Tr. at 26–28. She was unable to see the passenger's face, because he was turned toward the driver. Tr. at 27.

Shortly before Agent Polos called out over the radio that an officer needed assistance, Agent Monaco broadcast that the Red Nissan had pulled over on 10th Avenue and that an individual later identified as Juan Alzate–Victoria ("Alzate–Victoria") had gotten out of the car and entered the McDonald's parking lot. Tr. at 29, 56. Agent Polos observed Alzate–Victoria enter the parking lot with the group of Hispanic males which converged on the undercover officers. Tr. at 70–73. The surveillance agents lost sight of the Red Nissan moments after shots were fired.

Later that evening, agents located the Red Nissan at the 33rd Street parking lot. Tr. at 146–47. Agents Cronin and Erwin observed Abdala and Hernando Gonzalez ("Gonzalez") arrive in a brown Mazda automobile ("Brown Mazda"), park next to the lot, exit the Mazda, and enter the lot—with Gonzalez carrying a pink parking ticket. Tr. 150, 156–57. After

looking in the direction of the Red Nissan, which was surrounded by orange crime scene tape, Abdala and Gonzalez quickly exited the lot (without retrieving their car), and entered a nearby deli. Tr. at 155–57.

After Abdala and Gonzalez exited the deli carrying sodas, they got back into the Brown Mazda, turned on the lights, and started the engine. Tr. at 158. At that point, Agents Cronin and Kelly approached the car, and asked Abdala and Gonzalez to exit the vehicle. Tr. at 158–59. After the men got out of the car, Agent Cronin asked Abdala if he had any identification, and he produced two Florida drivers licenses. Tr. at 160. Cronin next placed Abdala's hands on the hood of the car and frisked him. Tr. at 161. Neither Abdala nor Gonzalez were handcuffed. Tr. at 161–62. Agent Erwin then questioned both men in Spanish. Tr. at 162. Erwin asked if they had a parking ticket, and they responded no. Tr. at 163, 166, 187. He asked them if they had been to the adjacent lot earlier that evening; they answered that they had not. Tr. at 166, 187. Erwin asked what they were doing in the area. *Id.* They responded that they had dropped off a girlfriend and were going to a club on the Avenue of the Americas. *Id.* Erwin then asked where this club was; they did not know the club's name or location. *Id.* Erwin asked if they had been inside the deli, and they answered that they had not been. Tr. at 167, 188. But when Erwin questioned the men about where they had obtained their sodas, they admitted that they had, in fact, been inside the deli, where they purchased the sodas. Tr. at 167–68, 188. Neither Abdala nor Gonzalez were provided *Miranda* warnings before or during this pre-arrest questioning.

While Erwin questioned Abdala and Gonzalez, Detective Cronin entered the deli and found several ripped up pieces of a parking ticket on the floor. Tr. at 168–69. The ticket pieces appeared to match the ticket taken from the windshield of the Red Nissan. Tr. at 169–70. Agent Cronin then returned with Detective Cronin to search the deli and found more pieces of a ripped-up parking ticket behind a soda case. Tr. at 170–71. When assembled, the pieces formed a complete ticket, except for one missing piece.

Tr. at 171. The numbers on the assembled ticket matched the numbers of the ticket from the window of the Red Nissan. Tr. at 171–72. The ticket reflected that the car had been parked at 5:55 p.m. on August 6, 1997, approximately five minutes after the shooting occurred. Tr. at 172. After assembling the ticket, Agents Cronin and Kelly arrested Abdala and Gonzalez. Tr. at 173.

### 2. Conclusions of Law

■ Based on all of these circumstances—the observations of the Red Nissan and its passengers, the Defendants' behavior in seeking to retrieve the car from the lot, and their subsequent false statements to the agents—the agents undoubtedly had probable cause for Abdala's arrest. Accordingly, Abdala's motion to suppress physical evidence recovered incident to his arrest is denied.

## II. Abdala's Motion to Suppress Statements Made Before His Arrest

Abdala moves to suppress the statements made prior to his arrest, alleging that the arresting agents improperly failed to advise him of his *Miranda* warnings before interrogating him. The questioning at issue is that of Agents Cronin, Kelly, and Erwin, asking (1) Abdala and Gonzalez for identification, (2) whether they had a parking ticket, (3) whether they had been in the parking lot, (4) whether they had been inside the deli, (5) where they had come from, and (6) where they were going. This questioning occurred before the agents had found all of the pieces of the ripped up parking ticket.

■ The agents' well-founded belief that the Red Nissan had been involved in the shooting at McDonald's, along with Cronin's observation of Abdala and Gonzalez's entry into the 33rd Street parking lot with a parking ticket in hand, and their rapid departure from the lot, were sufficient to make the agents reasonably suspicious that Abdala was connected with the assault at the McDonald's parking lot.

In light of the seriousness of the suspected criminal activity, the public location of the questioning, and the otherwise imminent departure of Abdala and Gonzalez, the agents'

limited investigatory questioning of the suspects concerning their identities and itineraries fell clearly within the parameters of a valid *Terry* stop. *See Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (brief questioning during investigatory stop permitted to establish identity and dispel reasonable suspicion of imminent criminal activity); *United States v. Dawdy,* 46 F.3d 1427, 1429–30 (8th Cir.1995) (stop reasonable when officer requested identification and explanation for driver's presence in otherwise deserted parking lot; continued detention reasonable to run warrant check when driver's answers conflicting); *United States v. Abokhai,* 829 F.2d 666, 670 (8th Cir.1987) (brief questioning during investigatory detention permissible when police requested identification and explanation of defendants' presence); *United States v. Pelusio,* 725 F.2d 161, 165 (2d Cir.1983) (in determining permissible scope of *Terry* stop, court may consider, *inter alia,* nature of crime under investigation and location of stop); *United States v. Ramirez–Cifuentes,* 682 F.2d 337, 343 (2d Cir.1982) (in determining permissible scope of *Terry* stop, court may consider seriousness of crime, imminence of suspect's departure, and location of stop).

Moreover, the brief detention of Abdala while agents searched the deli was not excessive, as the agents were diligently pursuing a means of investigation that was likely to confirm or dispel their suspicions quickly. *See United States v. Sharpe,* 470 U.S. 675, 686–87, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (*Terry* stop reasonable were police detained defendant for 30 to 40 minutes while officer pursued van that had appeared to travel in tandem with defendant's vehicle). Accordingly, the agents' limited questioning and detention of Abdala was justified as part of a valid *Terry* stop. Abdala's motion to suppress his pre-arrest statements is denied.

## IV. Bernal–Diaz's Challenge to the Probable Cause for His Arrest

■ Prior to the arrest of Bernal–Diaz, Agent Polos had observed Bernal–Diaz meet with other Hispanic males, including Gomez, outside of the McDonald's parking lot, and observed this group (including Bernal–Diaz)

converge on the undercover officers, as Gomez brandished a firearm. Tr. at 70–73, 77. After shots were fired, Detective Perez observed Bernal–Diaz chasing the Black Nissan, which had been identified as associated with persons believed to be involved with the assault. Tr. at 122–23, 125. After catching sight of Detective Perez, who had his detective's shield displayed over his bulletproof vest, Bernal–Diaz changed directions and began running away from Perez. Tr. at 123–25. Bernal–Diaz continued to flee even after Perez identified himself as a policeman and directed him to stop. Tr. at 124–25. Taken together, these observations give rise to probable cause for Bernal–Diaz's arrest. Therefore, Bernal–Diaz's motion to suppress the evidence recovered from him incident to his arrest is denied.

## V. Conclusion

For the aforementioned reasons, Abdala's and Bernal–Diaz's motions to suppress evidence recovered incident to their arrest and Abdala's motion to suppress his pre-arrest statements are denied.

SO ORDERED.