Adrian SCHOOLCRAFT, Plaintiff,

v.

CITY OF NEW YORK,
et al., Defendants.

No. 10 Civ. 6005(RWS).

United States District Court,
S.D. New York.

Signed Sept. 18, 2015.

564

Law Office of Nathaniel B. Smith, by: Nathaniel B. Smith, Esq., New York, NY, for the Plaintiff.

Zachary W. Carter, Corporation Counsel of the City of New York, by: Suzanna P. Mettham, Esq., New York, NY, for the City Defendants.

Martin Clearwater & Bell, LLP, by: Gregory J. Radomisli, Esq., New York, NY, for Defendant Jamaica Hospital Medical Center.

## OPINION

SWEET, District Judge.

Plaintiff Adrian Schoolcraft ("Schoolcraft" or "Plaintiff"); Defendants Christopher Broschart, Timothy Caughey, Kurt Duncan, Elise Hanlon, Theodore Lauterborn, Michael Marino, Gerald Nelson, Frederick Sawyer, The City Of New York, Timothy Trainer ("City Defendants"); and Defendant Deputy Inspector Steven Mau-

riello ("DI Mauriello") have moved for reconsideration of portions of the Court's May 5, 2015 *Summary Judgment Opinion*. DI Mauriello seeks reconsideration of the dismissal of his state law counterclaims. Plaintiff's motion seeks reconsideration of the Court's rulings on the admissibility of an expert's testimony, on the availability of qualified immunity as a defense against Plaintiff's first amendment claim, and on dismissal of Plaintiff's first amendment claim with respect to his postsuspension speech. The City Defendants' motion seeks reconsideration of the Court's discussion of the collective knowledge doctrine and dismissal of Captain Lauterborn as a defendant. The City Defendants separately filed a motion to bifurcate Plaintiff's *Monell* claim.

For the reasons set out below, DI Mauriello's and City Defendants' reconsideration motions are granted in part and denied in part. Plaintiff's reconsideration and City Defendants' bifurcation motions are denied.

## Prior Proceedings

A detailed recitation of the facts of the underlying case is provided in this Court's opinion dated May 5, 2015, which granted in part and denied in part five motions for summary judgment and resulting in the instant motions. *See Schoolcraft v. City of New York*, 103 F.Supp.3d 465, 474–75, No. 10 CIV. 6005 RWS, 2015 WL 2070187, at *1 (S.D.N.Y. May 5, 2015) (hereinafter *"Summary Judgment Opinion"*). Familiarity with those facts is assumed. The instant motions were marked fully submitted[1] on July 23, 2015.

---

1. Plaintiff's reply memorandum in support of his motion for reconsideration was submitted a day late, on July 24, 2015, based upon which the City Defendants, DI Mauriello and JHMC moved to strike it on July 29, 2015.

Though the Court denies the Defendants' request, Plaintiff's reply memorandum has nevertheless been insufficient to persuade the Court to grant any of Plaintiff's requested relief.

### Applicable Standard

██ A motion for reconsideration is properly granted where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995); *see also Farez–Espinoza v. Napolitano,* 08 Civ. 11060(HB), 2009 WL 1118098, at *3, 2009 U.S. Dist. LEXIS 35392, at *9 (S.D.N.Y. Apr. 27, 2009). Pursuant to Local Civil Rule 6.3 the Court may reconsider a prior decision to "correct a clear error or prevent manifest injustice." *Medisim Ltd. v. BestMed LLC,* 2012 WL 1450420, at *1, 2012 U.S. Dist. LEXIS 56800, at *2–3 (S.D.N.Y. Apr. 23, 2012) (citing *RST (2005) Inc. v. Research in Motion Ltd.,* 597 F.Supp.2d 362, 364–65 (S.D.N.Y.2009)).

██ Reconsideration of a court's prior order under Local Rule 6.3 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Ferring B.V. v. Allergan, Inc.,* No. 12 Civ. 2650(RWS), 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting *Sikhs for Justice v. Nath,* 893 F.Supp.2d 598, 605 (S.D.N.Y.2012)). Accordingly, the standard of review applicable to such a motion is "strict." *CSX,* 70 F.3d at 257 (2d Cir.1995).

██ The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion and that might " 'materially have influenced its earlier decision.' " *Anglo Am. Ins. Group v. CalFed, Inc.,* 940 F.Supp. 554, 557 (S.D.N.Y.1996); *see also Farez–Espinoza v. Napolitano,* 08 Civ. 11060(HB), 2009 WL 1118098, at *3, 2009 U.S. Dist. LEXIS 35392, at *9 (S.D.N.Y. Apr. 27, 2009). Pursuant to Local Civil Rule 6.3 the Court may reconsider a prior decision to "correct a clear error or prevent manifest injus-

tice." *Medisim Ltd. v. BestMed LLC,* 2012 WL 1450420, at *1, 2012 U.S. Dist. LEXIS 56800, at *2–3 (S.D.N.Y. Apr. 23, 2012) (citing *RST (2005) Inc. v. Research in Motion Ltd.,* 597 F.Supp.2d 362 (1996) (quoting *Morser v. AT & T Info. Sys.,* 715 F.Supp. 516 (S.D.N.Y.1989))); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir.2012) ("[T]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."). A party seeking reconsideration may neither repeat "arguments already briefed, considered and decided," nor "advance new facts, issues or arguments not previously presented to the Court." *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990) (citations omitted).

### DI Mauriello's Motion for Reconsideration is Denied in Part and Granted in Part

██ DI Mauriello seeks reinstatement of his state law counterclaims against Plaintiff for tortious interference with an employment relationship and prima facie tort. Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship. *Nadel v. Play–By–Play Toys & Novelties, Inc.,* 208 F.3d 368, 382 (2d Cir.2000).

The *Summary Judgment Opinion* dismissed the tortious interference claim on the third prong, holding that DI Mauriello had not established that Schoolcraft acted for the sole purpose of harming DI Mau-

riello and that DI Mauriello had not adequately pled that Schoolcraft's actions constituted "wrongful means." 103 F.Supp.3d at 525–26, 2015 WL 2070187, at *54. The Court also declined to consider several allegations made by DI Mauriello is his opposition briefing, holding that those allegations had not pled in Mauriello's Counterclaims. *Id.* at 526–27, 2015 WL 2070187, at *55. DI Mauriello takes issue with all of the above-summarized determinations in his reconsideration motion. *See generally* Mauriello Mem. in Supp't 5–22.

■ Upon reconsideration, tortious interference claim is reinstated. The *Summary Judgment Opinion* erroneously characterized the following contentions discussed in DI Mauriello's summary judgment motion briefing as "novel" allegations that had not been included in DI Mauriello's Counterclaims: Schoolcraft personally downgraded complaint reports, orchestrated the October 31 incident, misrepresented the status of the appeal of his 2008 Performance Evaluation, falsely denied being aware of the reason he was placed on restricted leave, accused Mauriello of placing him on restricted leave, contacted the media, falsely claimed he cared about the community served by the 81st Precinct, and falsely claimed he cared for his fellow officers, all in furtherance of his scheme to tortiously infer with Mauriello's career opportunities. *Summary Judgment Opinion,* 103 F.Supp.3d at 526–27, 2015 WL 2070187, at *55. However when further reviewed, several of these allegations were alleged in the Counterclaims. *See* Mauriello's Answer to SAC, Amended with Counterclaims, filed March 18, 2014 ("Mauriello Answer and Counterclaims"), 11–16. The Counterclaims alleged that: Schoolcraft personally downgraded complaint reports, orchestrated the October 31 incident, mischaracterized Mauriello's conduct in the press, and falsely claimed he was reporting on corrupt practices at the 81st Precinct out of concern for the community it served for his fellow officers, all in an effort to harm DI Mauriello and build a record in support of Schoolcraft's lawsuit. *Id.* These allegations, and the evidentiary record developed during discovery that substantiates them, are sufficient to satisfy the third prong of tortious interference claim on the basis of "wrongful conduct." Schoolcraft's immunity from suit under *Brandt v. Winchell* does not attach unless Schoolcraft's allegations against DI Mauriello are proven true, a question of fact to be determined at trial.

■ However, DI Mauriello has not met his burden with respect to reinstatement of his prima facie tort claim. DI Mauriello has asserted that "questions of fact exists with respect to whether Schoolcraft intentionally inflicted harm on Mauriello 'without excuse or justification and motivated solely by malice.'" Mauriello Mem. in Supp't 21. To survive summary judgment, a prima facie tort claim cannot rest upon a defendant's intentional and malicious conduct alone, but must further demonstrate that the defendant acted out of "disinterested malevolence." *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 451 N.E.2d 459 (N.Y.1983). DI Mauriello alleged that Schoolcraft acted at least in part to generate support of his lawsuit against the NYPD. *See generally,* Mauriello Answer and Counterclaims, 13, ¶ 7. The existence of monetary self-interest defeats an assertion of disinterested malevolence. *See Margrabe v. Sexter & Warmflash, P.C.,* 353 Fed.Appx. 547, 549 (2d Cir.2009). In *Margrabe,* the Second Circuit dismissed a prima facie tort claim where the plaintiff contended that the defendant filed a defamation action in order to coerce the plaintiff into abandoning the plaintiff's a different action against the defendant for fees. *Id.* The Second Circuit dismissed the prima facie tort because "it is clear that [the

defendant] had a monetary interest in initiating the defamation action." *Id.* Dismissal in *Margrabe* did not turn on whether the defamation action was meritorious, it turned on whether disinterested malevolence was the sole basis for the suit. *Id.* As noted above, DI Mauriello acknowledged Plaintiff's motivation in bringing this case was not solely Schoolcraft's disinterested malevolence against DI Mauriello. Consequently, the prima facie tort claim remains dismissed.

### City Defendants' Motion for Reconsideration is Denied in Part and Granted in Part

 City Defendants request modification of the *Summary Judgment Opinion's* discussion of the collective-knowledge doctrine and dismissal of Captain Lauterborn as a defendant. With respect to the collective-knowledge doctrine, the *Summary Judgment Opinion* stated that:

> The doctrine applies only where officers are in communication, sharing information relevant to the determination of exigent circumstances.... Here, the record does not establish whether other officers were aware of Dr. Lamstein's warning to Captain Lauterborn. *See* Facts ¶¶ 92, 123. Consequently, whether Dr. Lamstein made the statement to Captain Lauterborn, and whether Captain Lauterborn in turn communicated that information to his colleagues such that the collective knowledge doctrine may apply, present questions of fact barring summary judgment for the City Defendants.

103 F.Supp.3d at 502, 2015 WL 2070187, *31. City Defendants correctly note that the doctrine "permits courts to assess probable cause to arrest by looking at the collective knowledge of the police force," and does not require that the arresting officer know the precise facts justifying police action. *See* City Defs.' Mem. in Supp't 6 (citing *United States v. Valez,* 796

F.2d 24, 28 (2d Cir.1986)). Consequently, whether Captain Lauterborn communicated the information to his colleagues is not relevant to the applicability of the doctrine. However, City Defendants have not established that Dr. Lamstein's knowledge alone is enough for qualified immunity because "she is indisputably part of the investigation and was in 'some communication.'" City Defs.' Reply Mem. 2 (citing *United States v. Cruz,* 834 F.2d 47, 51 (2d Cir.1987)). *Cruz* referenced *officers* who partake in an investigation and engaged in some communication, and City Defendants have not established that Dr. Lamstein was an officer. *See id.*

With respect to Lieutenant Caughey, City Defendants correctly note that the Court held that "Schoolcraft's protected First Amendment right to report to IAB and QAD was not clearly established at the time it was made. Consequently, the First Amendment Claim cannot be pleaded against any officers in their individual capacities." *Summary Judgment Opinion,* 103 F.Supp.3d at 514, 2015 WL 2070187, at *42. Consistent with the *Summary Judgment Opinion's* qualified immunity holding, Lieutenant Caughey does not remain a defendant on the basis of the First Amendment claim.

 In his opposition to City Defendants' motion, Plaintiff contends that Lieutenant Caughey should remain a defendant on the basis of to his state law claims for assault and intentional infliction of emotional distress (IIED). *See* Pl.'s Mem. in Opp'n 8–9. City Defendants counter that both claims fail as a matter of law as against Lieutenant Caughey. City Defs.' Reply Mem. 5–6. Under New York law, assault is the intentional placing of another person in reasonable apprehension of imminent harmful or offensive contact. *United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 108 (2d Cir.

1993); *Okoli v. Paul Hastings LLP,* 117 A.D.3d 539, 985 N.Y.S.2d 556, 557 (2014). City Defendants contend that the record established only that Lieutenant Caughey arguably behaved in a menacing manner, but did not establish that Schoolcraft has a reasonable fear of an imminent touching. City Defs.' Reply Mem. 5. They further note that "Plaintiff's own statements, not put before the Court on summary judgment but available for submission should the Court desire it, make clear that Caughey never removed his gun from his holster during this interlude, whether he was touching his gun or not." *Id.* at n. 3. For the purposes of this motion, the factual record may not be expanded beyond that established in the *Summary Judgment Opinion. See Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990). Plaintiff's 56.1 Statement, filed together with his motion for summary judgment, referenced Schoolcraft's deposition transcript where he testified as follows:

> Q. Your Complaint states that Lieutenant Caughey was menacing and threatening to you, by keeping his hand on his gun on October 31, 2009; is that correct?
>
> A. Correct.
>
> Q. Did you believe he was going to shoot you?
>
> A. At the time, I believed his behavior was inappropriate. And I—I felt anything was possible.
>
> Q. Did you believe that anyone from the N.Y.P.D. was going to use their firearm against you on October 31, 2009?
>
> A. I don't recall specifically thinking that, no.
>
> . . .
>
> A. I felt Caughey's behavior that day was menacing and threatening.
>
> Q. And you believed that he was threatening to kill you?
>
> A. I believe his behavior was menacing, and intimidating and threatening.

Schoolcraft Tr. 118:3–25–120:10 (referenced in Pl.'s 56.1 Statement SI 55, which Plaintiff cites in Pl.'s Mem. in Opp'n 24). When asked whether Schoolcraft was asked whether he feared that Lieutenant Caughey would injury him, he responded that "I don't recall any specific—any specific thing that I thought he would do to me." *Id.* at 122:8–12. "To survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to come forward with specific facts showing that there is a genuine issue for trial." *Wrobel v. Cnty. of Erie,* 692 F.3d 22, 30 (2d Cir.2012) (internal quotations and citations omitted). Schoolcraft's testimony cannot be fairly read to support his contention that he had a reasonable fear of imminent harm. Consequently, Lieutenant Caughey does not remain a defendant on the basis of the assault claim.

██ City Defendants finally contend that Schoolcraft's intentional infliction of emotional distress (IIED) claim against Caughey fails as a matter of law. *See* City Defs.' Reply Mem. 7–8. To maintain a claim of IIED under New York law, Schoolcraft must establish "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. New York Post Co.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (N.Y.1993) (internal quotations and citations omitted). Schoolcraft contends that Caughey remains a defendant on the basis of the IIED claim.

However, as Schoolcraft detailed in his briefing in opposition to the City Defendants' motion for summary judgment, the outrageous conduct to which Schoolcraft was subjected began after he left the precinct on October 31, i.e., conduct as to which Lieutenant Caughey was not involved. *See* Pl.'s Mem. in Opp'n to Summary Judgment Motion 62–62 ("Taken as a whole, however, their conduct is outrageous: a police officer reporting misconduct is pulled out of his bed in the middle of the night by his superiors for reporting their misconduct; he is physically assaulted, thrown on the floor, stepped on and handcuffed; his home is searched and evidence is destroyed; he is removed from his home handcuffed to a chair in the view of all his neighbors and taken to a psychiatric facility, where he is physically abused and incarcerated without any medical or legal basis as a "dangerous and mentally ill" person and released a week later, to be pursued relentlessly for the next six months at his family residence in upstate New York, his career in shambles."). Consequently, Lieutenant Caughey is dismissed as a defendant on this and the other claims discussed above.

### City Defendants' Motion for Bifurcation is Denied

 City Defendants request bifurcation of the trial on Plaintiff's *Monell* claims. Federal Rule of Civil Procedure 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue or any number of claims, or issues." Fed.R.Civ.P. 42(b). City Defendants request bifurcation in the interests of efficiency and to avoid prejudice, which they contend would result if a jury were presented extensive evidence of prior bad conduct. *See* City Defs.' Mem. in Supp't 12–20; City Defs.' Reply Mem. 6–9.

Plaintiff convincingly argues that there will be significant overlap between the evidence he will offer in support of his *Monell* claims and in support of the other claims that survived summary judgment. *See* Pl.'s Mem. in Opp'n 4–7. Consequently, efficiency considerations do not favor bifurcation. Moreover, the substantial prejudice which City Defendants contend will result from permitting the jury to hear evidence regarding quotas or the blue wall of silence, *id.* at 19, will be adequately mitigated through the ubiquitous and efficacious means of limiting instructions, jury charges and limiting instructions. Consequently, the motion to bifurcate is denied.

### Plaintiff's Motion for Reconsideration is Denied

Plaintiff requests reconsideration of the Court's rulings with respect to the admissibility of Dr. Halpren–Ruder's expert testimony, qualified immunity, and the first amendment claim for post-suspension conduct. *See generally* Pl.'s Mem. in Supp't 2–6.

 With respect to the admissibility of Dr. Ruder's report, the Court held that the testimony evaluating the quality of care provided to Schoolcraft at the JHMC emergency department was inadmissible for lack of sufficient foundation. *Summary Judgment Opinion,* 103 F.Supp.3d at 537–38, 2015 WL 2070187, at *67 (noted that Dr. Ruder referenced guidelines from a different jurisdiction not in effect at the time of Schoolcraft's hospitalization). Plaintiff contends that, in fact, Dr. Ruder testified that the basis for his evaluation of the JHMC's actions were "universally applied standards of care regarding involuntary psychiatric commitment of patients." Pl.'s Reply Mem. 7 (citing to Halpren–Ruder Dep. 85:01–25). But this portion of the deposition dealt with Dr. Ruder's evaluation of JHMC's EMTs' conduct in deciding to transport Schoolcraft to the hospi-

tal, not with JHMC's quality of care once Schoolcraft arrived. *See* Halpren–Ruder Dep. 79:9–85:22. Moreover, in his briefing in opposition to JHMC's motion for summary judgment, Plaintiff did not address JHMC's argument that faulted Dr. Ruder for relying on the guidelines. *See* Pl.'s Mem. in Opp'n of Summary Judgment Motion, 117–119 (limiting discussion of admissibility of expert testimony to the testimony of a different medical expert, Dr. Lubit). As noted above, a party seeking reconsideration may neither repeat arguments already briefed, considered and decided, nor advance new facts, issues or arguments not previously presented to the Court. *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990) (internal quotations and citations omitted). Plaintiff cannot now advance arguments not previously presented to the Court in the Summary Judgment motion. Consequently, Dr. Ruder's testimony remains inadmissible.

■ Plaintiff next seeks reconsideration of the Court's holding with respect to qualified immunity. *See generally* Pl.'s Mem. in Supp't 3. Plaintiff reiterates the arguments put forth in his letter in response to City Defendants' summary judgment reply briefing. *Id.* (including citations to *Golodner v. Berliner*, 770 F.3d 196, 206 (2d Cir.2014)). Plaintiff's objection that City Defendants made their qualified immunity argument in their reply briefing was, and remains, unpersuasive because entry of Second Circuit's decision in *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir.2015), occurred after the City Defendants' memorandum in support was filed. It was on the basis of *Matthews*, not *Golodner*, that the Court reversed its earlier ruling on this issue and held, for the first time, that Schoolcraft's First Amendment claim extends to his pre-suspension speech. *Summary Judgment Opinion*, 103 F.Supp.3d at 508–10, 2015 WL 2070187, at *36–37. As noted in the

*Summary Judgment Opinion*, it cannot be said that the right was clearly established, since the Court ruled in 2012 that that same right had not been established. *Id.* at 509–10, 2015 WL 2070187, at *37. Consequently, the qualified immunity holding remains unaltered.

Finally, Schoolcraft requests reconsideration of the dismissal of his first amendment claim related to his post-suspension conduct. Pl.'s Mem. in Supp't 4–6. Schoolcraft notes that Second Circuit in *Dorsett v. County of Nassau* determined that a first amendment claim can be based upon certain other types of "concrete harm," not solely upon a chilling effect. 732 F.3d 157, 160 (2d Cir.2013) (noting that that a loss of a government contract, additional scrutiny at border crossings, revocation of building permits, and refusal to enforce zoning laws are all adequate cognizable harms even in the absence of a chilling effect).

In his summary judgment briefing, Plaintiff failed to argue that he could pursue a claim without establishing a chilling effect or adverse employment action. *See* Pl.'s Mem. in Opp'n of Summary Judgment Motion, 19–27. Plaintiff's summary judgment contention was that a chilling effect occurred due to his placement in custody for mental health evaluation at Jamaica Hospital Medical Center. *Id.* at 27 (citing *Kerman v. City of New York*, 261 F.3d 229, 241–242 (2d Cir.2001), which required a chilling effect on plaintiff's speech). It is only now, in his reconsideration motion, that Plaintiff introduces the test as set out in *Dorsett*.

■ Moreover, only limited sorts of concrete harms will substitute for chilling effect in retaliation cases and, as a general matter, chilling effect is still required. *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir.2011) (noting that other forms of harm have been recognized in limited contexts

and that "[d]espite these limited exceptions, as a general matter, First Amendment retaliation plaintiffs must typically allege 'actual chilling.' "). Such contexts include imposition of several traffic tickets soon after protected speech, officers' pushing and deploying pepper spray after protected speech, or imposition of criminal charges after protected speech. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir.2015); *Prince v. Cnty. of Nassau*, 563 Fed.Appx. 13, 17 (2d Cir.2014); *Pluma v. City of New York*, No. 13 CIV.2017 LAP, 2015 WL 1623828, at *7 (S.D.N.Y. Mar. 31, 2015); *Higginbotham v. City of New York*, No. 14–CV–8549 PKC RLE, 105 F.Supp.3d 369, 382–83, 2015 WL 2212242, at *11 (S.D.N.Y. May 12, 2015). However, they do not extend to allegations that defendants cursed at plaintiff on several occasions and acted aggressively towards him, or that defendants per se defamed defendant, or to generalized allegations of stalking. *See Zherka*, 634 F.3d at 645; *Crichlow v. Fischer*, No. 12–CV–7774 NSR, 2015 WL 678725, at *4 (S.D.N.Y. Feb. 17, 2015); *Longinott v. Bouffard*, No. 11 Civ. 4245(VB), 2012 WL 1392579, at *4 (S.D.N.Y. Apr. 17, 2012).

Plaintiff has not established that the NYPD visits are the limited sort of concrete harm accepted by the courts. Other than that on one occasion, the NYPD officers did not interact with Schoolcraft while in his Jamestown residence. *Summary Judgment Motion*, 103 F.Supp.3d at 489–99, 2015 WL 2070187, at *27. The type of conduct about which Plaintiff complains is akin to non-actionable "surveillance activities conducted near but outside the curtilage of one's home—i.e., an area to which the intimate activity associated with the sanctity of one's home and the privacies of life is extended." *See United States v. Hayes*, 551 F.3d 138, 145 (2d Cir.2008) (internal citation and quotation marks omitted). Where officers are "physically located in public places such as Plaintiff's workplace or public streets adjacent to or near Plaintiff's home, without intruding upon the curtilage of Plaintiff's home," a Plaintiff's right to privacy is not violated. *Paige v. New York City Police Dep't*, No. 10–CV–3773 SLT LB, 2012 WL 1118012, at *4 (E.D.N.Y. Mar. 30, 2012); *see also Hayes*, 551 F.3d at 145 (police may use drug sniffing dogs in front of suspect's home without a warrant); *Esmont v. City of New York*, 371 F.Supp.2d 202, 212 (E.D.N.Y.2005) ("Unobstructed, open areas in front of a residence are not entitled to Fourth Amendment protection."). Plaintiff has not demonstrated that the NYPD's visits to Schoolcraft's upstate residence rise to the level of the concrete harm contemplated by *Dorsett*.

Though Plaintiff contends that the NYPD's conduct on October 31, 2009 constitutes actionable harm under *Dorsett*, he does not attempt to tie that harm with constitutionally-protected speech that has not already been held to be protected *See* Pl.'s Reply Mem. 17–18. In the *Summary Judgment Opinion*, the Court has already held that "Schoolcraft's First Amendment claim with respect to his pre-suspension speech to IAB and QAD survives summary judgment." 103 F.Supp.3d at 513, 2015 WL 2070187, at *41. Therefore, Plaintiff has not demonstrated how applying *Dorsett* will "reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

Plaintiff's first amendment claim with respect to his post-suspension speech remains dismissed.

### *Conclusion*

Based on the conclusions set forth above, DI Mauriello's counterclaim for tortious interference is reinstated and Lieu-

tenant Caughey is dismissed as a defendant.

It is so ordered.