12-4795-cv
Prince v. County of Nassau

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of April, two thousand fourteen.

PRESENT: AMALYA L. KEARSE,
         DENNIS JACOBS,
         GERARD E. LYNCH,

                    <u>Circuit Judges.</u>

- - - - - - - - - - - - - - - - - - - -X

MATTHEW PRINCE,

        <u>Plaintiff-Appellant,</u>

        -v.-                                    No. 12-4795-cv

COUNTY OF NASSAU; "JOHN" FITZGERALD,
Lieutenant, Nassau County Police
Department, 1st Precinct; JOHN/JANE
DOES # 1-5 (Police Supervisory and
Training Personnel); "JOHN" SOTO,
"JOHN" HERMAN, ARNOLD ROTHENBERG,
Sergeants, 1st Precinct; JOHN/JANE
DOES # 6-20 (police officers); SCOTT
TUSA, Associate Fire Marshal, Nassau
County Office of Fire Marshal;

1

**JOHN/JANE DOES # 21-25 (Fire Marshal Supervisory and Training Personnel); and JOHN/JANE DOES # 26-30 (Associate Fire Marshals),**

> **Defendants-Appellees.**[*]

- - - - - - - - - - - - - - - - - - - - - -X

**FOR PLAINTIFF-APPELLANT:** FRANK J. SCATURRO, FisherBroyles LLP, New York, NY.

**FOR DEFENDANTS-APPELLEES:** JOSEPH E. MACY (Donna A. Napolitano, Daniel J. Evers, on the brief), Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., Garden City, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hurley, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED.**

Matthew Prince appeals a judgment dismissing his complaint against Defendants County of Nassau (the "County") and various of its police officers and fire marshals. Prince claims that Defendants engaged in a years-long campaign of harassment against him and restaurants affiliated with him in retaliation for his parents' October 2002 Internal Affairs Unit complaint and for his January 2003 grand jury testimony, which helped a police suspect avoid indictment. The district court granted summary judgment and judgment as a matter of law in favor of Defendants on Prince's 42 U.S.C. § 1983 municipal liability and First Amendment retaliation claims (among others). The remaining claims, including a § 1983 claim against two individual defendants and an intentional infliction of emotional distress ("IIED") claim, went to a jury, which returned a verdict in favor of Defendants.

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

Prince argues that the district court erred by: (1) dismissing the § 1983 municipal liability claim; (2) dismissing the First Amendment retaliation claim; (3) inadequately responding to a jury question regarding the IIED claim; (4) failing to take necessary remedial action to prevent prejudice from trial delays; and (5) precluding a witness from offering testimony regarding the witness's own fear of retaliation. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

1. § 1983 Municipal Liability. We review de novo a grant of summary judgment, drawing all reasonable inferences in the non-moving party's favor. See Wrobel v. Cnty. of Erie, 692 F.3d 22, 27 (2d Cir. 2012). Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We also review de novo a grant of judgment as a matter of law. See Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 167 (2d Cir. 2003). Judgment as a matter of law is proper "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

Prince has advanced four theories of municipal liability: (1) that the County failed to properly train Internal Affairs Unit investigators; (2) that the County failed to properly train police officers and fire marshals in the enforcement of the licensed premises codes; (3) that County police officers and fire marshals implemented a policy of harassment targeted at Prince; and (4) that senior policy makers demanded Prince's termination from a restaurant with which he was affiliated or ratified their subordinates' improper behavior. See Prince v. Cnty. of Nassau, 837 F. Supp. 2d 71, 103-06 (E.D.N.Y. 2011). The district court properly rejected all four of Prince's theories.

Municipal liability may be premised on a failure to train employees if inadequate training "reflects deliberate indifference to the constitutional rights of its inhabitants." City of Canton v. Harris, 489 U.S. 378, 392 (1989). To prove deliberate indifference, plaintiff must

3

show: (1) "that a policymaker knows to a moral certainty that . . . employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal quotation marks omitted).

Prince presents insufficient evidence that Internal Affairs Unit investigators improperly handled his parents' complaint, and no evidence that the investigators' training instilled deliberate indifference to constitutional rights. Similarly, Prince's argument that the officers and marshals were not properly trained on inspection procedure is premised on minor enforcement inconsistencies (e.g., whether tickets were issued to a bar manager or owner), which fall short of evidencing deliberate indifference. Both failure-to-train theories were therefore properly rejected.

As for the alleged pattern of harassment, it is true that a "governmental 'custom'" may sometimes constitute official policy. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). To "generate municipal liability," however, the "discriminatory practices of [municipal] officials" must be "persistent and widespread," "so permanent and well settled as to constitute a custom or usage with the force of law," and "so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992) (internal quotation marks omitted). There is insufficient evidence that the harassment Prince cites, which was personal to himself, rose to the level of a "permanent and well settled . . . custom or usage with the force of law." Nor was there sufficient evidence for a rational juror to conclude that the County's "senior policy-making officials" knew or should have known of the pattern of harassment described by Prince.

Finally, "[w]here a plaintiff seeks to hold a municipality liable for a single decision by a municipal policymaker, the plaintiff must show that the official had final policymaking power." Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008) (citation, internal quotation marks, and brackets omitted). "Whether the official in

4

question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (citations omitted).

All of Prince's assorted policymaker-based theories fail. County Executive Thomas Suozzi's statement--that he was "aware" that a problem at the restaurant had been resolved--does not demonstrate his involvement in Prince's termination, or approval of it. As for a June 2007 meeting at which Prince's termination was allegedly coordinated, two of the attendees--Fire Marshal Michael Krummenacker and Assistant Chief Kevin Lowry--were not policymakers. There is no evidence that the other attendees specifically pressed for the restaurant owner to fire Prince. The officials appear to have been focused on helping the restaurant succeed, not on carrying out a vendetta against Prince.

Prince's theories of municipal liability were therefore appropriately rejected by the district court before the jury returned a verdict.[1]

2. First Amendment Retaliation. The district court granted summary judgment to Defendants on Prince's First Amendment retaliation claim because, "even assuming that plaintiff has engaged in conduct protected by the First Amendment . . . his claim must still fail because he has . . . failed to demonstrate that any action taken by defendants 'effectively chilled the exercise of his First Amendment right.'" Prince, 837 F. Supp. 2d at 96 (quoting Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008)). We have since clarified, however, that "[c]hilled speech is not the sine qua non of a First Amendment claim." Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013). Rather, "[t]o plead a First Amendment retaliation claim[,] a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that

---

[1] Moreover, the jury ultimately found that Prince was not deprived of any constitutionally protected property right by Sergeant Richard Soto and Assistant Chief Fire Marshal Scott Tusa, who Prince alleged were major players in the campaign of harassment and the only two individual defendants against whom § 1983 liability claims remained at trial.

right; and (3) the defendant's actions caused him some injury." Id. Prince's retaliation claim still fails under this clarified standard.

There is insufficient connection between Prince's testimony in the grand jury proceeding and the alleged harassment against him years later. In the three years following his grand jury testimony, Prince was issued fewer appearance tickets than in the ten months preceding. Prince has not raised a genuine issue of material fact as to whether acts of County police officers and fire marshals during the limitations period were motivated by retaliatory animus, rather than by a good-faith desire to enforce the licensed premises codes and to end the repeated instances of fighting, overcrowding, and underage drinking. See Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) ("Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim.").

In any event, Prince was permitted to, and did, argue to the jury that the motivation for the alleged misconduct that remained at issue during the trial was police hostility to Prince's grand jury testimony, and all of the evidence relevant to his First Amendment claim was presented to the jury. It appears that the jury credited Defendants' version of events, rejecting Prince's remaining § 1983, tortious interference with contract, and IIED claims.

3. Jury Instructions Regarding IIED. A jury note sought "examples of outrageous [and] shocking" conduct, and the court responded by reiterating the legal standard for an IIED claim, without either providing concrete examples or using language suggested by Prince's counsel.

"Generally, we will reverse the judgment of a trial court and grant a new trial because of an error in the jury instructions only if we are persuaded, based on a review of the record as a whole, that the error was prejudicial or the charge was highly confusing." Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1345 (2d Cir. 1994) (emphasis omitted). The instruction here was neither.

An IIED claim requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy

6

v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303 (1983) (internal quotation marks omitted). The IIED inquiry is inherently fact-specific and individualized. See Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122 (1993) ("[The tort of] intentional infliction of emotional distress does not proscribe specific conduct, but imposes liability based on after-the-fact judgments about the actor's behavior." (citations omitted)). The district court did not err by reiterating the correct legal standard and letting the jury make up its own mind about whether the alleged conduct met that standard.

4.   Trial Delay.   Prince argues that the thirteen-day gap between the close of evidence and the start of jury deliberations denied him a fair trial. The trial, however, was expected to (and did) take many weeks, even without weather-related delays. The jury appears to have conscientiously performed its role, asking for read-backs and for clarification when necessary. Prince's claims of prejudice are speculative and lack record support.

5.   Preclusion of Green's Testimony.   Prince argues that the district court improperly excluded testimony of Christopher Greene, who was Prince's friend and a restaurant employee. Greene was to testify that he did not report police misconduct because he feared that he would suffer a similar campaign of harassment. The district court excluded the testimony because it was conclusory and speculative, and would likely confuse the jury and prejudice Defendants. See Fed. R. Evid. 403.

We review "a challenge to [a] district court's evidentiary ruling . . . for abuse of discretion, reversing only if we find manifest error." United States v. Al Kassar, 660 F.3d 108, 123 (2d Cir. 2011). "Rule 403 determinations command especial deference because the district court is in the best position to do the balancing mandated by Rule 403." Id. (internal quotation marks omitted).

Greene had already testified about his fear of police action. Prince and his doctors also testified at length about the anxiety Prince experienced as a result of police harassment. The district court, therefore, did not abuse discretion by precluding Greene's additional testimony as cumulative, potentially confusing and prejudicial, and minimally probative.

7

We have considered all of Prince's remaining arguments and conclude that they are without merit. The judgment of the district court is hereby affirmed.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK